Maria Diana Garcia
Joachim Morrison
Alfredo Gonzalez Benitez
COLUMBIA LEGAL SERVICES
7103 W. Clearwater Avenue, Suite C
Kennewick, WA 99336
(509) 374-9855

T. David Copley
Laura R. Gerber
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
(206) 623-1900

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| GILBERTO GÓMEZ GARCIA and JONATHAN GÓMEZ RIVERA, as individuals and on behalf of all other similarly situated persons,<br><br>Plaintiffs,<br><br>vs.<br><br>STEMILT AG SERVICES, LLC,<br><br>Defendant. | <u>CLASS ACTION</u><br><br>**JURY DEMANDED**<br><br>No. _____<br><br>COMPLAINT FOR DAMAGES |

## **PRELIMINARY STATEMENT**

1.      This is a forced labor class action on behalf of over 1,100 H-2A farm workers who worked for Stemilt Ag Services, LLC in 2017 ("workers" or "Class Members"). The workers allege that Stemilt violated federal anti-trafficking laws by threatening to terminate and blacklist H-2A workers from future employment in the United States if they did not meet unlawful daily production standards. This

COMPLAINT FOR DAMAGES - 1

practice caused H-2A workers to believe they would suffer serious economic harm unless they submitted to Stemilt's labor demands. The workers further allege that Stemilt withheld their updated work permits as an additional coercive technique to prevent workers from leaving Stemilt's property.

2.      The above actions also created a hostile work environment based on the Plaintiffs' and Class Members' national origin and violated their right to be free from discrimination in employment under the Washington Law Against Discrimination.

3.      In addition, Stemilt violated state wage laws when it failed to pay H-2A workers for wait times, both before and after work, when Stemilt transported the workers to other Stemilt orchards. Stemilt managers required Plaintiffs and Class Members to wait, uncompensated, both before entering the fields and after a full day's work.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (Federal Question).

5.      This Court has jurisdiction over this action pursuant to 18 U.S.C. § 1595(a) (Trafficking Victims Protection Act).

6.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1367 (Supplemental Jurisdiction).

COMPLAINT FOR DAMAGES - 2

7.    The proper venue for this action is in the Eastern District of Washington pursuant to 28 U.S.C. § 1391.

## PARTIES

8.    Plaintiff Gilberto Gómez Garcia lives in the state of Jalisco, Mexico, and was employed by Stemilt Ag Services, LLC as an H-2A worker in 2017.

9.    Plaintiff Jonathan Gómez Rivera lives in the state of Jalisco, Mexico, and was employed by Stemilt Ag Services, LLC as an H-2A worker in 2017.

10.    Defendant Stemilt Ag Services, LLC is a Washington corporation with its principal place of business in Wenatchee, Washington located in Chelan County.

## STATEMENT OF FACTS

**Background**

11.    Plaintiffs are Mexican nationals who worked for Stemilt Ag Services, LLC as H-2A farm workers during 2017.

12.    Defendant Stemilt Ag Services, LLC is a wholly-owned subsidiary of Stemilt Growers, a large tree fruit company in Wenatchee.

13.    Stemilt manages more than 8,000 acres of company-owned and leased orchards.

14.    Stemilt is one of the largest agricultural employers in the United States.

COMPLAINT FOR DAMAGES - 3

15.     H-2A workers are particularly vulnerable and often subject to work conditions and requirements that local workers—who have the freedom to vote with their feet and find different employment—would not tolerate. For example, the H-2A program ties the worker's visa to his employer, therefore, H-2A workers are less likely to complain out of fear of being sent back to their country and not being brought back to work in the future.

16.     Prior to 2017, Stemilt knew that H-2A workers came from impoverished backgrounds.

17.     Prior to 2017, Stemilt had a policy of not re-hiring H-2A workers who failed to complete their H-2A employment contract.

18.     Prior to 2017, Stemilt knew that H-2A workers feared being blacklisted from future H-2A employment.

19.     Prior to 2017, Stemilt knew that its H-2A workers would be housed in isolated, rural company labor camps and rely almost exclusively on the company for transportation.

20.     Prior to 2017, Stemilt knew that H-2A workers obtained non-immigrant work visas that strictly limit employment within the United States to just one employer.

21.     Prior to 2017, Stemilt knew that its H-2A workers could not legally leave their worksite and seek employment at other farms.

COMPLAINT FOR DAMAGES - 4

22.    Prior to 2017, Stemilt knew that if the company fired an H-2A worker, the worker would have to pay for his own transportation and meal costs back to Mexico.

**The Stemilt Work Contract**

23.    As part of the H-2A application process, Stemilt submitted to the United States Department of Labor an Agricultural and Food Processing Clearance Order ETA Form 790 which is a job order, or work contract, containing all pay and work conditions.

24.    The Department of Labor is required to review and approve the job order to ensure it complies with H-2A statutes and regulations to protect the wages and working conditions of Washington local farm workers.

25.    As part of the H-2A application process, Stemilt assured the Department of Labor that it would comply with all federal and state employment laws.

26.    As part of the H-2A application process, Stemilt requested 1,177 H-2A workers to work at Stemilt's orchards for three months, from August 14 to November 15, 2017.

27.    Stemilt submitted an H-2A job order to the United States Department of Labor in which it certified that the job order "describes the actual terms and

COMPLAINT FOR DAMAGES - 5

conditions of the employment being offered by me and contains all the material terms and conditions of the job."

28.    Stemilt's H-2A job order stated that they anticipated 35 hours of work per week covering Monday through Saturday. While specific hours were listed for each of those days, no hours were listed for Sunday in the job order.

29.    Stemilt's H-2A job order guaranteed minimum piece rates for various work.

30.    Stemilt's H-2A job order did not contain daily production standards.

31.    Stemilt knew that production standards were not approved for H-2A employment contracts as a result of the 2016 wage and practice surveys conducted by the Washington State Employment Security Department.

32.    Stemilt's H-2A job order only stated: "Workers must work at a sustained pace and make bona-fide efforts to work efficiently and consistently that are reasonable under the climatic and all other working conditions."

**<u>Stemilt's Illegal and Unauthorized Production Standards</u>**

33.    During an upper management meeting in mid-September of 2017, Stemilt, including its president West Mathison, unilaterally decided to alter the terms and conditions of the H-2A job order and impose production standards on all H-2A workers by requiring them to pick a specific number of bins of apples per day or they would be fired and sent back to Mexico.

COMPLAINT FOR DAMAGES - 6

**Stemilt's Threats to Fire and Blacklist Workers from Future Employment in the United States**

34.     Stemilt instructed its orchard managers to issue written warnings to the H-2A workers if they did not meet these daily production standards.

35.     Stemilt instructed orchard managers to fire and send back to Mexico, without any transportation or meal costs paid, any H-2A worker who received three warnings for not meeting daily production standards.

36.     In order to financially benefit Stemilt and intimidate its H-2A workforce, Stemilt's orchard managers and employees regularly threatened H-2A workers in group meetings that if daily production standards were not met, they would be fired.

37.     In order to financially benefit Stemilt and intimidate its H-2A workforce, Stemilt's orchard managers and employees regularly threatened H-2A workers in group meetings that if daily production standards were not met, they would be sent back to Mexico without any transportation or meal costs paid.

38.     In order to financially benefit Stemilt and intimidate its H-2A workforce, Stemilt's orchard managers and employees regularly threatened H-2A workers in group meetings that if daily production standards were not met, they would be blacklisted from future H-2A work with any agricultural employer in the United States.

COMPLAINT FOR DAMAGES - 7

Columbia Legal Services
7103 W. Clearwater Avenue, Suite C
Kennewick, WA 99336
(509) 374-9855

39.     In 2017, Stemilt knew that its unilateral policy to impose unlawful production standards combined with the threat of termination and blacklisting would cause H-2A workers to fear serious economic harm and keep them working in the orchards under duress.

**Stemilt Withheld Work Permits**

40.     In 2017, Stemilt prepared and offered two separate H-2A employment contracts.

41.     The first contract began on January 16 and ended on August 11, 2017.

42.     The second contract began on August 14 and ended on November 15, 2017.

43.     The work permits of H-2A workers hired by Stemilt for the first contract expired in early August 2017.

44.     Stemilt informed the H-2A workers who agreed to enter into the second contract that the work permits would be renewed.

45.     Upon information and belief, Stemilt applied for and obtained extensions of the permits, but withheld providing those permit extensions to most H-2A workers until the second contract was nearly finished.

46.     Stemilt knew that by withholding the renewed work permits, H-2A workers would fear being arrested or deported for being in the country illegally if they left the labor camp without the appropriate documentation (*i.e.*, their work

COMPLAINT FOR DAMAGES - 8

Columbia Legal Services
7103 W. Clearwater Avenue, Suite C
Kennewick, WA 99336
(509) 374-9855

permits) so they would instead stay on the orchard grounds and continue working at Stemilt's orchards.

**Stemilt Failed to Pay H-2A Workers for Wait Times**

47.    In 2017, Stemilt routinely transported H-2A workers housed at one Stemilt orchard site to pick fruit at a different Stemilt orchard sites.

48.    When H-2A workers had to work at other Stemilt orchards, they were dependent on Stemilt to transport them to and from the orchard.

49.    When H-2A workers arrived at the orchard, Stemilt's orchard managers routinely required them to wait approximately half an hour or more before they were permitted to start work.

50.    When H-2A workers finished work, Defendant's orchard managers routinely required them to wait at least approximately half an hour or more while the manager completed paperwork in the office before transporting the workers back to their labor camp.

51.    Stemilt failed to compensate H-2A workers for these waiting periods.

**Stemilt's Hostile Work Environment**

52.    Stemilt's actions described in Paragraphs 33 through 51 were directed at the its H-2A workers who were Mexican nationals.

53.    Stemilt managers routinely threatened to send workers back to Mexico or told them to go back to Mexico.

COMPLAINT FOR DAMAGES - 9

54.     When H-2A workers were injured, Stemilt would not provide them with appropriate medical care.

55.     When H-2A workers were injured, Stemilt would not pay for any necessary care, leaving the workers to pay for care they were able to obtain.

56.     Stemilt managers threatened H-2A workers that they would not be brought back the following year if they were injured.

**Factual Allegations of Plaintiff Gilberto Gómez Garcia**

57.     Plaintiff Gilberto Gómez Garcia lives in an impoverished town in Jalisco, Mexico.

58.     Plaintiff Gómez Garcia comes to the United States to work as the economy in Mexico is very difficult and the pay is not enough to support his family.

59.     Plaintiff Gómez Garcia worked for Stemilt as an H-2A worker in 2008, 2009, and from 2012 to 2017.

60.     In 2017, Plaintiff Gómez Garcia began working for Stemilt in early April and his work permit was valid until early August when Stemilt's first H-2A employment contract ended.

61.     Plaintiff Gómez Garcia entered into Stemilt's second H-2A employment contract ending on November 15, 2017 and was housed at Stemilt's J.V.O. labor camp.

COMPLAINT FOR DAMAGES - 10

62.     Plaintiff Gómez Garcia relied on Stemilt for transportation from his isolated labor camp to Stemilt's different orchards to work.

63.     Plaintiff Gómez Garcia spent approximately one hour per day traveling on Stemilt transportation when he was sent to Stemilt's Arrow Ridge orchard to work.

64.     In 2017, when Plaintiff Gómez Garcia's work permit expired in August he repeatedly asked for his renewed work permit and was consistently told by Stemilt's employees that the work permit would arrive shortly.

65.     Plaintiff Gómez Garcia did not receive his renewed work permit until the end of October, approximately two weeks before his contract expired.

66.     Plaintiff Gómez Garcia feared leaving the labor camp without a valid work permit because it could be perceived by law enforcement that he was in the United States illegally.

67.     Upon information and belief, Stemilt retained the work permit of Plaintiff Gómez Garcia and other H-2A workers to keep them working in the orchards.

68.     In September 2017, Plaintiff Gómez Garcia was injured while working for Stemilt; however, Stemilt's Human Resources support told him that if he went to the doctor, he would be responsible for paying the medical bill because he did not have a renewed work permit.

COMPLAINT FOR DAMAGES - 11

69.     Based on his fear that he would have to pay for his medical costs, Plaintiff Gómez Garcia did not go to the doctor to receive medical treatment.

70.     During the 2017 apple harvest, even though his H-2A contract did not have production standards, Stemilt's managers instructed Plaintiff Gómez Garcia that he had to meet daily production standards.

71.     Throughout the 2017 apple harvest, Stemilt's managers threatened Plaintiff Gómez Garcia that if the production standards were not met, he would be issued a written warning.

72.     Throughout the 2017 apple harvest, Stemilt's managers instructed Plaintiff Gómez Garcia that if he received three warnings for not meeting the production standards, he would be fired and sent back to Mexico.

73.     During group H-2A worker meetings, Stemilt's managers and employees threatened Plaintiff Gómez Garcia and the other H-2A workers with sending them back to Mexico and never hiring them again.

74.     During group H-2A worker meetings, Stemilt's manager told Plaintiff Gómez Garcia and the other H-2A workers that if they did not like the working conditions, they could go back to Mexico and they would never be able to work for Stemilt or another company in the United States.

75.     Stemilt's managers informed Plaintiff Gómez Garcia and the other H-2A workers that they would be working by piece-rate (and the company's H-2A

COMPLAINT FOR DAMAGES - 12

Columbia Legal Services
7103 W. Clearwater Avenue, Suite C
Kennewick, WA 99336
(509) 374-9855

contract guaranteed minimum piece rates); however, no matter how hard he worked, his wages appeared to be pegged to the minimum hourly rate.

76.    When Stemilt transported Plaintiff Gómez Garcia from the J.V.O. orchard labor camp to the Arrow Ridge and Mattawa orchards to work, Stemilt's managers required Plaintiff Gómez Garcia to wait approximately an hour or more before being permitted to start work.

77.    Once Plaintiff Gómez Garcia finished the work day, Stemilt's managers required him to wait approximately an hour to allow the manager to finish paperwork before being transported back to the J.V.O. orchard.

78.    Plaintiff Gómez Garcia provided labor to Stemilt under threat of termination and loss of future employment in the United States.

79.    Plaintiff Gómez Garcia provided labor to Stemilt due to fear that he would suffer serious financial harm if he did not meet daily production standards.

80.    Plaintiff Gómez Garcia provided labor to Stemilt due to fear that termination would lead to blacklisting from future H-2A employment in the United States.

81.    Plaintiff Gómez Garcia was constructively discharged in October of 2017 as a result of Stemilt's threats and coercion to complete the daily production standards.

COMPLAINT FOR DAMAGES - 13

Columbia Legal Services
7103 W. Clearwater Avenue, Suite C
Kennewick, WA 99336
(509) 374-9855

82.    Plaintiff Gómez Garcia was forced to leave his employment in October of 2017 as a result of the hostile work environment directed at Mexican nationals created by Stemilt.

83.    Plaintiff Gómez Garcia was constructively discharged in October of 2017 because Stemilt failed to pay his full wages.

**Factual Allegations of Plaintiff Jonathan Gómez Rivera**

84.    Plaintiff Jonathan Gómez Rivera lives in an impoverished town in Jalisco, Mexico.

85.    Plaintiff Gómez Rivera comes to the United States to work as the economy in Mexico is very difficult and the pay is not enough to support his family.

86.    Plaintiff Gómez Rivera was hired as an H-2A worker by Stemilt in 2017.

87.    In 2017, Plaintiff Gómez Rivera began working for Stemilt in early April and his work permit was valid until August 11th when Stemilt's first H-2A employment contract ended.

88.    The last week of July or first week of August, Plaintiff Gómez Rivera agreed to accept Stemilt's second H-2A employment contract, which ended on November 15, 2017.

COMPLAINT FOR DAMAGES - 14

89.    In 2017, Plaintiff Gómez Rivera was housed at Stemilt's Ice Harbor labor camp.

90.    Plaintiff Gómez Rivera relied on Stemilt for transportation from his isolated labor camp to Stemilt's different orchards to work.

91.    Plaintiff Gómez Rivera spent approximately three hours per day on Stemilt's bus traveling  to Stemilt's Mattawa and Othello orchards to work.

92.    After his work permit expired on August 11, 2017, Plaintiff Gómez Rivera repeatedly asked Stemilt's office staff when his new work permit would be provided.

93.    Stemilt's office staff repeatedly told Plaintiff Gómez Rivera that they had not received his new work permit, although Ana Guerrero, Stemilt's Human Resources Support, told him and other workers that the office had already received the new work permits.

94.    Stemilt never provided Plaintiff Gómez Rivera with his renewed work permit.

95.    Plaintiff Gómez Rivera feared leaving Stemilt's labor camp without a valid work permit because he was unsure if he was in the United States legally without it.

COMPLAINT FOR DAMAGES - 15

Columbia Legal Services
7103 W. Clearwater Avenue, Suite C
Kennewick, WA 99336
(509) 374-9855

96.     Upon information and belief, Stemilt had Plaintiff Gómez Rivera's renewed work permit but refused to provide it to him as a means to keep him working in Stemilt's orchards under duress.

97.     During the 2017 apple harvest, even though his H-2A contract did not have production standards, Stemilt's managers instructed Plaintiff Gómez Rivera that he had to meet daily production standards.

98.     Throughout the 2017 apple harvest, Stemilt's managers threatened Plaintiff Gómez Rivera that if the production standards were not met, he would be issued a written warning.

99.     Throughout the 2017 apple harvest, Stemilt's managers instructed Plaintiff Gómez Rivera that if he received three warnings for not meeting the production standards, he would be fired and sent back to Mexico.

100.    Stemilt's managers and employees threatened Plaintiff Gómez Rivera and the other H-2A workers with sending them back to Mexico and never being hired again if they did not work faster.

101.    During H-2A worker crew meetings, Stemilt's manager told Plaintiff Gómez Rivera and the other H-2A workers that if they did not like the working conditions, they could go back to Mexico, and they would never be able to work for Stemilt or another company in the United States.

COMPLAINT FOR DAMAGES - 16

102.    Stemilt's managers required Plaintiff Gómez Rivera and other H-2A workers to work on Sunday even though the contract did not require Sunday work, and if a worker did not go in to work, they would receive a written warning.

103.    Frequently, Stemilt's managers would inform Plaintiff Gómez Rivera and the other H-2A workers that they would be working by piece-rate (and the company's H-2A contract guaranteed minimum piece rates); however, no matter how hard he worked, his wages appeared to be pegged to the minimum hourly rate.

104.    Stemilt's manager regularly told Plaintiff Gómez Rivera and the other workers that if they complained or were injured they would not be brought back to work the next year.

105.    During the 2017 apple harvest, Plaintiff Gómez Rivera fell from a ladder on several occasions but did not report his injuries.

106.    When Stemilt transported Plaintiff Gómez Rivera from the Ice Harbor labor camp to the Mattawa and Othello orchards to work, Stemilt's managers required Plaintiff Gómez Rivera to wait approximately an hour before being permitted to start work.

107.    Once Plaintiff Gómez Rivera finished the work day, Stemilt's managers required him to wait approximately half an hour to allow the manager to finish paperwork before being transported back to the Ice Harbor orchard.

COMPLAINT FOR DAMAGES - 17

108.    Plaintiff Gómez Rivera provided labor to Stemilt under threat of termination and loss of future employment in the United States.

109.    Plaintiff Gómez Rivera provided labor to Stemilt due to fear that he would suffer serious financial harm if he did not meet daily production standards.

110.    Plaintiff Gómez Rivera provided labor to Stemilt due to fear that termination would lead to blacklisting from future H-2A employment in the United States.

111.    Plaintiff Gómez Rivera was constructively discharged in October of 2017 as a result of Stemilt's threats and coercion to complete the daily production standards.

112.    Plaintiff Gómez Rivera was forced to leave his employment  in October of 2017 as a result of the hostile work environment directed at Mexican nationals created by Stemilt.

113.    Plaintiff Gómez Rivera was constructively discharged in October of 2017 because Stemilt failed to pay his full wages.

## CLASS ACTION ALLEGATIONS

### A. "TVPA Class"

114.    Plaintiffs Gilberto Gómez Garcia and Jonathan Gómez Rivera ("Representative Plaintiffs") bring this action on their own behalf and on behalf of a class of persons similarly situated, pursuant to Federal Rules of Civil Procedure

COMPLAINT FOR DAMAGES - 18

23(a) and (b)(3), consisting of: All Mexican nationals employed at Stemilt Ag Services, LLC in Washington, pursuant to the 2017 H-2A contract from August 14 through November 15, 2017 ("TVPA Class").

115.    The class is so numerous that joinder of all members is impracticable. The exact size of the class is not known; however, on information and belief, the class consists of over 1,100 individuals.

116.    The Representative Plaintiffs are represented by experienced counsel who will vigorously prosecute the litigation on behalf of the class.

117.    Questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy because:

a.      Members of the class do not have an overriding interest in individually controlling the prosecution of separate actions;

b.      Concentration of the litigation in this forum is desirable in order to have all claims resolved in one case; and

c.      A class action can be managed without undue difficulty because the issues presented are common to the class, Stemilt is required to maintain detailed records concerning each member of the class, and Plaintiffs' counsel have experience prosecuting cases of this nature.

COMPLAINT FOR DAMAGES - 19

118.    Common questions of law and fact include:

a.    Whether Stemilt had a scheme or pattern of threatening H-2A workers to cause them to believe that, if they did not perform labor or services for Defendant, they would suffer serious financial harm in violation of 18 U.S.C. § 1589(a)(4);

b.    Whether Stemilt abused the law to obtain the continued labor of its H-2A workers in violation of 18 U.S.C. § 1589(a)(3); and,

c.    Whether Stemilt had a common practice of mistreating H-2A workers creating a hostile work environment on the basis of national origin in violation of the Washington Law Against Discrimination, RCW 49.60.180(3).

119.    The claims of Representative Plaintiffs are typical of the claims of the Plaintiff class they seek to represent, and they will fairly and adequately protect the interests of the class.

**B.  "Wait Time Class"**

120.    The Representative Plaintiffs seek certification of a second class on their own behalf and on behalf of all persons similarly situated, pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3), consisting of: All Mexican nationals employed at Stemilt Ag Services, LLC in Washington, pursuant to the 2017 H-2A contracts from January 16 through November 15, 2017, who traveled on Stemilt buses to other Stemilt orchards for work ("Wait Time Class").

COMPLAINT FOR DAMAGES - 20

121.    The class is so numerous that joinder of all members is impracticable. The exact size of the class is not known; however, on information and belief, the class consists of over 1,200 individuals.

122.    The Representative Plaintiffs are represented by experienced counsel who will vigorously prosecute the litigation on behalf of the class.

123.    Questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy because:

a.    Members of the class do not have an overriding interest in individually controlling the prosecution of separate actions;

b.    Concentration of the litigation in this forum is desirable in order to have all claims resolved in one case; and

c.    A class action can be managed without undue difficulty because the issues presented are common to the class, Stemilt is required to maintain detailed records concerning each member of the class, and Plaintiffs' counsel have experience prosecuting cases of this nature.

124.    The common question of law and fact is whether Stemilt had a policy of requiring H-2A workers who used Stemilt transportation to wait without compensation both before and after work in the orchards in violation of the laws of

COMPLAINT FOR DAMAGES - 21

the State of Washington by willfully refusing to pay for Plaintiffs' wait times in violation of RCW 49.52.050(2).

125.    The claims of Representative Plaintiffs are typical of the claims of the Plaintiff class they seek to represent, and they will fairly and adequately protect the interests of the class.

## CAUSES OF ACTION

## COUNT ONE
## Trafficking Victims Protection Act – 18 U.S.C. § 1589(a)(4)
## (Asserted by the TVPA Class)

126.    Pursuant to the Trafficking Victims Protection Act, it is unlawful to obtain the labor or services of a person by, *inter alia*, "means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint." 18 U.S.C. § 1589(a)(4). The term "serious harm" means "any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm." 18 U.S.C. § 1589(c)(2).

127.    Stemilt engaged in a scheme or pattern of threatening H-2A workers to cause them to believe that, if they did not meet unlawful daily production

COMPLAINT FOR DAMAGES - 22

Columbia Legal Services
7103 W. Clearwater Avenue, Suite C
Kennewick, WA 99336
(509) 374-9855

standards, they would suffer serious financial harm in violation of 18 U.S.C. § 1589(a)(4).

## COUNT TWO
### Trafficking Victims Protection Act – 18 U.S.C. § 1589(a)(3)
### (Asserted by the TVPA Class)

128.    Pursuant to the Trafficking Victims Protection Act, it is unlawful to obtain the labor or services of a person by, *inter alia*, "by means of the abuse or threatened abuse of law or legal process." 18 U.S.C. § 1589(a)(3). The term "abuse or threatened abuse of law or legal process" means the use or threatened use of a law or legal process, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action. 18 U.S.C. § 1589(c)(1).

129.    Stemilt engaged in a common practice of abusing federal and state laws including violations of H-2A laws and threatening to blacklist workers who complained from further employment in the United States in order to obtain the continued labor of its H-2A workers in violation of 18 U.S.C. §1589(a)(3).

## COUNT THREE
### Trafficking Victims Protection Act – 18 U.S.C. § 1592(a)
### (Asserted by the TVPA Class)

130.    Pursuant to the Trafficking Victims Protection Act, it is unlawful to "knowingly … remove[ ], confiscate[ ], or possesses any actual or purported

COMPLAINT FOR DAMAGES - 23

passport or other immigration document, or any other actual or purported government identification document, of another person … to prevent or restrict or to attempt to prevent or restrict, without lawful authority, the person's liberty to move or travel, in order to maintain the labor or services of that person." 18 U.S.C. §1592(a).

131.    Stemilt retained the work permits of H-2A workers to restrict their liberty to move in order to obtain and maintain the continued labor of its workers in violation of 18 U.S.C. §1592(a).

### COUNT FOUR
### Washington Law Against Discrimination – RCW 49.60.180(3)
### (Asserted by the TVPA Class)

132.    Stemilt had a common practice of mistreating its H-2A workforce that created a hostile work environment based on national origin and violated the Plaintiffs' and Class Members' right to be free from discrimination in employment in violation of RCW 49.60.180(3).

### COUNT FIVE
### Breach of Contract
### (Asserted by the TVPA Class)

133.    Stemilt breached its H-2A contract when it unilaterally imposed daily production standards requiring H-2A workers to pick a certain number of bins of apples per day.

Columbia Legal Services
7103 W. Clearwater Avenue, Suite C
Kennewick, WA 99336
(509) 374-9855

134.    Stemilt breached its H-2A contract when it did not pay its H-2A workforce the piece rates enumerated in the Departement of Labor ETA Form 790.

135.    Stemilt breached its H-2A contract when it forced its H-2A workforce to work on Sundays.

136.    Stemilt breached its duty of good faith and fair dealing when it engaged in the common practice of imposing unlawful production standards requiring H-2A workers to pick a certain number of bins of apples per day.

### COUNT SIX
### Willful Refusal To Pay Wages – RCW 49.52.050(2)
### (Asserted by the Wait Time Class)

137.    Stemilt willfully refused to pay for Plaintiffs' and Class Members wait times in violation of RCW 49.52.050(2).

138.    As a result, Plaintiffs and Class Members are entitled to recover twice the amount of the wages withheld, as well as attorneys' fees and costs, pursuant to RCW 49.52.070.

### PRAYER FOR RELIEF

Plaintiffs ask this Court to grant them the following relief:

1.    Certify this action as a class action pursuant to Fed. R. Civ. P. 23(b)(3);

2.    Designate the named Plaintiffs as class representatives of the TVPA Class and the Wait Time Class pursuant to Fed. R. Civ. P. 23(a);

COMPLAINT FOR DAMAGES - 25

3.      Appoint Columbia Legal Services and Keller Rohrback L.L.P. as class counsel for the TVPA Class and the Wait Time Class pursuant to Fed. R. Civ. P. 23(g);

4.      Award to Plaintiffs and other members of the TVPA Class all profits gained from the forced labor Stemilt imposed on H-2A workers, including the imposition of illegal production standards, pursuant to 18 U.S.C. §1595(a) and Washington contract law;

5.      Award punitive damages to Plaintiffs and other members of the TVPA Class pursuant to 18 U.S.C. §1595(a) as Stemilt recklessly violated Plaintiffs' rights by abusing its authority over its H-2A workforce;

6.      Award to Plaintiffs and other members of the Wait Time Class the amount of wages withheld for wait times plus double damages pursuant to RCW 49.52.070;

7.      Award to Plaintiffs and other members of the the TVPA Class and Wait Time Class lost wages pursuant to 18 U.S.C. §1595(a), RCW 49.60.030(2), and Washington contract law;

8.      Award attorney fees and costs pursuant to 18 U.S.C. §1595(a), RCW 49.48.030, RCW 49.52.070, and RCW 49.60.030(2); and,

9.      Grant other further relief as just and appropriate.

COMPLAINT FOR DAMAGES - 26

Columbia Legal Services
7103 W. Clearwater Avenue, Suite C
Kennewick, WA 99336
(509) 374-9855

DATED this 20th day of July, 2020.

COLUMBIA LEGAL SERVICES

s/Maria Diana Garcia
Maria Diana Garcia, WSBA #39744
Joachim Morrison, WSBA #23094
Alfredo Gonzalez Benitez, WSBA
#54364
7103 W. Clearwater Avenue, Suite C
Kennewick, WA 99336
(509) 374-9855
Email: diana.garcia@columbialegal.org
Email: joe.morrison@columbialegal.org
Email:
alfredo.gonzalez@columbialegal.org
*Attorneys for Plaintiffs*

KELLER ROHRBACK L.L.P.

s/T. David Copley
T. David Copley, WSBA #19379
Laura R. Gerber, WSBA #34981
1201 Third Avenue, Suite 3200
Seattle, WA 98101
(206) 623-1900
Email: dcopley@kellerrohrback.com
Email: lgerber@KellerRohrback.com
*Attorneys for Plaintiffs*

4827-1852-1282, v. 1

COMPLAINT FOR DAMAGES - 27