1   BRENDAN V. MONAHAN (WSBA #22315)
    LANCE A. PELLETIER (WSBA #49030)
2   STOKES LAWRENCE
    VELIKANJE MOORE & SHORE
3   120 N. Naches Avenue
    Yakima, Washington 98901-2757
4   (509) 853-3000

5

6               UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF WASHINGTON
7

8   GILBERTO GOMEZ GARCIA and
    JONATHAN GOMEZ RIVERA, as          Case No.:  2:20-cv-00254-SMJ
    individuals and on behalf of all other
9   similarly situated persons,        ANSWER TO COMPLAINT

10              Plaintiffs,

11       v.

12  STEMILT AG SERVICES, LLC,

13              Defendant.

14

15                    **PRELIMINARY STATEMENT**

16      1.     Paragraph 1 of Plaintiffs' Complaint is a preliminary statement that calls for

17  no substantive response. To the extent the conclusory remarks are offered as allegations,

18  such allegations are denied.

19      2.     Deny.

20      3.     Deny.

21

ANSWER TO COMPLAINT - 1
052556.007 \ 28310638v1

**JURISDICTION AND VENUE**

4.    Defendant admits that Plaintiffs' claim, as drafted, invokes federal jurisdiction by relying on one or more federal statutes. Defendant denies the validity of the claims but admits that at this state of proceedings federal jurisdiction has been effectively invoked.

5.    Admit, subject to the limitations articulated above.

6.    Supplemental jurisdiction is generally extended to state law disputes that "are so related" to claims over which the district courts have original jurisdiction that they "form part of the same case or controversy".  Here, Defendant denies that the bus waiting time claims (RCW 49.52.050(2)) are so related. As to one of the two remaining state law claims asserted by Plaintiffs (RCW 49.60.180(3)), it is unclear at this stage in proceedings the extent to which it is so related to the federal law claims, and Defendant accordingly denies that supplemental jurisdiction is appropriate.  Defendant admits that Plaintiffs' state law claims for breach of contract form part of the same case or controversy as Plaintiffs TVPA claims.

7.    Admit.

**PARTIES**

8.    Defendant admits that it employed Plaintiff Gomez Garcia for a period of time in 2017. Defendant has no knowledge of Plaintiff Gomez Garcia's current place of residence, and accordingly denies that he currently lives in Jalisco, Mexico.

ANSWER TO COMPLAINT - 2
052556.007 \ 28310638v1

STOKES LAWRENCE
VELIKANJE MOORE & SHORE
120 N. NACHES AVENUE
YAKIMA, WASHINGTON 98901-2757
(509) 853-3000

9.    Defendant admits that it employed Plaintiff Gomez Rivera for a period of time in 2017. Defendant has no knowledge of Plaintiff Gomez Rivera's current place of residence, and accordingly denies that he currently lives in Jalisco, Mexico.

10.    Admit.

## STATEMENT OF FACTS

**Background**

11.    Defendant does not know what Plaintiffs mean by the term "Mexican nationals". To the extent Plaintiffs mean that they were born in Mexico, and/or that they were born to parents who were Mexican citizens, Defendant is without sufficient facts to form a belief as to the truth or falsity of such allegation, and accordingly denies same. Notwithstanding the foregoing, Defendant admits that it recruited and transported Plaintiffs from their homes in Mexico and employed them in the United States in 2017.

12.    Admit.

13.    Admit.

14.    Defendant is without sufficient facts to form a belief as to the truth or falsity of such allegation, and accordingly denies same.

15.    Defendant admits that an H-2A visa permits a guest worker to perform labor services for a single employer or a set of identified employers within a defined time frame. The remaining allegations are argumentative and conclusory and are accordingly denied.

ANSWER TO COMPLAINT - 3
052556.007 \ 28310638v1

16.    Deny.  Stemilt has no knowledge of the particular financial status of any given H-2A worker and no knowledge of whether Plaintiffs' definition of "impoverished" is intended to align with or differentiate Plaintiffs from the typical socio-economic status of Defendant's domestic workers.

17.    Defendant does not have a "policy" of participating in the H-2A program or "re-hiring" any H-2A workers year over year. The United States' immigration policy presents a volatile and uncertain landscape, preventing agricultural employers from adopting any firm policy with respect to annual recruitment of a lawfully authorized and capable labor force. Subject to this response, Defendant admits that an H-2A worker who abandons his job or who is terminated for good cause is generally not considered eligible to work at Stemilt in succeeding seasons.

18.    Deny. Stemilt does not "blacklist" H-2A workers, nor does it know of any H-2A employers who do.

19.    Deny. Stemilt admits that it housed all its H-2A employees in a manner consistent with federal and state regulations.  Stemilt rejects the argument that such housing is always "isolated", rejects the pejorative and incendiary label of "labor camps", and affirmatively pleads that many H-2A workers owned and operated their own motor vehicles.

20.    Deny. In 2017, Stemilt belonged to a nonprofit agricultural association. The association often facilitated the movement of H-2A workers, giving them the opportunity

STOKES LAWRENCE
VELIKANJE MOORE & SHORE
120 N. NACHES AVENUE
YAKIMA, WASHINGTON 98901-2757
(509) 853-3000

1    to work under successive work contracts with multiple employers in the United States.

2    Subject to this denial, Stemilt admits that in 2017 it understood that its H-2A employees

3    had visas issued by the United States government that exclusively authorized them to

4    work for Stemilt, so long as Stemilt had available work for them to perform during the

5    terms of their respective contracts.

6        21.    Deny. H-2A workers were free to leave their worksite any time they were

7    not scheduled to be actively working. Such workers were free to "seek employment at

8    other farms" as they wished; but such farms would only have been legally able to hire

9    such workers in coordination with the U.S. Department of Labor.  It was not uncommon

10    in Washington for H-2A workers to coordinate with farm labor contractors or agricultural

11    associations to secure work visas that allowed them to work for multiple employers

12    throughout the season. H-2A workers at Stemilt who completed the first H-2A contract

13    (January to August, 2017) were well withing their rights to seek employment with any

14    other employers in Washington who had DOL approved H-2A contracts in place for apple

15    harvest (or for hops, or pears, or for other agricultural commodities with harvest dates

16    falling after the completion of the first Stemilt contract), and to work with farm labor

17    contractors and/or agricultural associations to obtain such work. Subject to such denial,

18    Stemilt agrees that an employee who had accepted work under the terms of one of its

19    approved job orders would generally not be permitted by the Department of Labor to

20

21

STOKES LAWRENCE
VELIKANJE MOORE & SHORE
120 N. NACHES AVENUE
YAKIMA, WASHINGTON 98901-2757
(509) 853-3000

abandon that contract prior to the completion of its term and then obtain work from an employer who did not participate in the H-2A program.

22.      Deny. H-2A workers may be "fired" for a wide range of reasons, including weather conditions that impact crop or the appearance of domestic workers seeking corresponding employment in the first half of the contract. In the instance of displaced workers, the H-2A contract in place in the fall of 2017 explicitly provided that Stemilt had a duty to try to transfer the foreign worker to other comparable employment, and, failing that, to pay for the worker's return to his home.  Further, H-2A regulations provide that H-2A workers who are fired without cause must have their return transportation paid by the employer. Subject to this denial, Stemilt admits that employees who are fired for cause and those who unilaterally abandon their work contract are generally expected to pay their return fare home.

**The Stemilt Work Contract**

23.      Admit.

24.      Admit.

25.      Admit.

26.      Admit.

27.      Admit.

28.      Admit

29.      Admit.

ANSWER TO COMPLAINT - 6
052556.007 \ 28310638v1

**STOKES LAWRENCE**
**VELIKANJE MOORE & SHORE**
120 N. NACHES AVENUE
YAKIMA, WASHINGTON 98901-2757
(509) 853-3000

1    30.    Deny, insofar as the term "production standards" is vague.  Stemilt admits

2    that there were no contractually required units of daily production. Stemilt denies that

3    there were not general rules and requirements that required employees to work at a

4    sustained effort and a productive pace.

5    31.    Deny. The 2016 ESD Peak Employment Wage and Practice Employer

6    Survey does not include the term "production standards", nor did it either approve or

7    disapprove whatever it is that Plaintiffs mean by their term "production standards".

8    Subject to such denial, this is what the 2016 ESD Peak Employment Wage and Practice

9    Employer Survey said about "productivity standards":

> *A productivity standard is defined as "a minimum amount of work a seasonal*
> *or migrant worker must produce as a condition of job retention, where failure*
> *to meet the minimum standard results in training, progressive discipline and*
> *possible termination, or, not inviting employees back who were hired as day*
> *laborers. An example of a productivity standard is picking a minimum*
> *quantity of fruits or vegetables in a given day." To unpack that a bit, a*
> *productivity standard is a requirement that workers meet some established*
> *threshold of minimum productivity as a condition of continued employment.*
> *For example, at Mirror Pond Farms, I might want to set a productivity*
> *standard for the cherry harvesters in my employ. Perhaps I might set*
> *standards of 14, 30-lb lugs per day for red cherries, and 12, 20-lb lugs per*
> *day for yellow cherries. With this productivity standard in place, any worker*
> *who fails to meet the minimum standards on a regular basis may be subject*
> *to sanction up to, and including, termination.*

Following this definition, the Survey continued:

> *Note that not everyone (or every crop-variety-activity combination) will have*
> *a productivity standard. In the event that you do not have a productivity*
> *standard for a particular crop-variety-activity combination, simply put the*
> *words "not required." Also, keep in mind that this needs to be a quantifiable*
> *productivity standard. This means it needs to take the form of some amount of*

STOKES LAWRENCE
VELIKANJE MOORE & SHORE
120 N. NACHES AVENUE
YAKIMA, WASHINGTON 98901-2757
(509) 853-3000

*product, per some unit of time.* ***Some employers have productivity standards related to hygiene, showing up to work on time, working hard, etc. – which is fine – but these are not quantifiable productivity standards and do not provide useful information for the survey estimations****. (Emphasis added).*

32.    Deny.  Stemilt's job order said more than that.  In addition to the language quoted in the Complaint, the job order stated:

> *The employer is further entitled to discipline or terminate a worker who malingers or otherwise refuses without justified cause to perform as directed the work for which the worker was recruited….*

> *If the Worker is consistently unable to perform their duties in a timely and proficient manner consistent with applicable industry standards, considering all factors, they will be provided training in accordance with Employer's progressive discipline standards, including verbal instruction, written warnings, time off, or other coaching instruction to teach the Worker to work more efficiently. If performance does not improve after coaching and several warnings the Worker may be terminated. These standards are not linked to any specific productivity measure and apply equally to if the Worker is working on an hourly and/or piece rate basis.*

**Stemilt's Illegal and Unauthorized Production Standards**

33.    Deny.

**Stemilt's Threats to Fire and Blacklist Workers from Future Employment in the United States**

34.    Deny.

35.    Deny.

36.    Deny.

37.    Deny.

38.    Deny.

STOKES LAWRENCE
VELIKANJE MOORE & SHORE
120 N. NACHES AVENUE
YAKIMA, WASHINGTON 98901-2757
(509) 853-3000

1    39.    Deny.

2    **Stemilt Withheld Work Permits**

3    40.    Admit.

4    41.    Admit.

5    42.    Admit

6    43.    Admit.

7    44.    Deny.  Stemilt did not use the term "renewed".

8    45.    Deny.

9    46.    Deny.

10    **Stemilt Failed to Pay H-2A Workers for Wait Times**

11    47.    Deny that the practice was "routine".  Admit that it occurred.

12    48.    Deny. Significant numbers of H-2A workers owned and operated their own

13    vehicles.

14    49.    Deny.

15    50.    Deny.

16    51.    Deny that such waiting periods existed.

17    **Stemilt's Hostile Work Environment**

18    52.    Deny.

19    53.    Deny.

20    54.    Deny.

21

ANSWER TO COMPLAINT - 9
052556.007 \ 28310638v1

**STOKES LAWRENCE**
**VELIKANJE MOORE & SHORE**
120 N. NACHES AVENUE
YAKIMA, WASHINGTON 98901-2757
(509) 853-3000

55.    Deny.    Any H-2A employee who was injured during the course of employment had his medical expenses paid by Stemilt's industrial insurance plan.  Work time missed due to workplace injuries was also compensated by time loss payments. For injuries that occurred outside the scope of work, H-2A employees had access to free medical care at Stemilt's employee health clinics.

56.    Deny.

**Factual Allegations of Plaintiff Gilberto Gomez Garcia**

57.    Stemilt is without sufficient facts to form a belief as to the truth or falsity of this allegation, and such allegation is accordingly denied.

58.    Stemilt is without sufficient facts to form a belief as to the truth or falsity of this allegation, and such allegation is accordingly denied.

59.    Admit.

60.    Admit.

61.    Admit that Plaintiff Gomez Garcia agreed to the terms of the second 2017 job order, and that he was provided free housing in Stemilt's JVO living quarters, which were licensed for up to 50 residents. Stemilt denies that such location was a "labor camp".

62.    Stemilt is without sufficient facts to form a belief as to the truth or falsity of this allegation, and such allegation is accordingly denied.

ANSWER TO COMPLAINT - 10
052556.007 \ 28310638v1

STOKES LAWRENCE
VELIKANJE MOORE & SHORE
120 N. NACHES AVENUE
YAKIMA, WASHINGTON 98901-2757
(509) 853-3000

63.    Stemilt is unaware of whether Plaintiff Gomez Garcia utilized Stemilt transportation on the eight days that he traveled to work at Arrow Ridge. The estimated drive time from JVO to Arrow Ridge is approximately 25 minutes.

64.    Stemilt has no record or knowledge of Plaintiff Gomez Garcia "repeatedly" asking for his "renewed" work permit. Stemilt affirmatively states that his visa for the second contract would have been provided to him within a reasonable time from when it was received from the United States government, and that no H-2A visas were knowingly or intentionally withheld for any purpose.

65.    Stemilt is without sufficient facts to form a belief as to the truth or falsity of this allegation, and such allegation is accordingly denied.

66.    Stemilt is without sufficient facts to form a belief as to the truth or falsity of this allegation, and such allegation is accordingly denied.

67.    Deny.

68.    Deny.

69.    Stemilt is without sufficient facts to form a belief as to the truth or falsity of this allegation, and such allegation is accordingly denied.

70.    Deny.

71.    Deny.

72.    Deny.

73.    Deny.

ANSWER TO COMPLAINT - 11
052556.007 \ 28310638v1

STOKES LAWRENCE
VELIKANJE MOORE & SHORE
120 N. NACHES AVENUE
YAKIMA, WASHINGTON 98901-2757
(509) 853-3000

1    74.    Deny.

2    75.    Deny that Plaintiff Gomez Garcia was ever paid less than precisely the sum

3    of the piece rate wages he generated, plus rest break pay, or AEWR for all hours worked,

4    whichever was higher.

5    76.    Deny.

6    77.    Deny.

7    78.    Deny.

8    79.    Deny.

9    80.    Deny.

10    81.    Deny.

11    82.    Deny.

12    83.    Deny.

13    **Factual Allegations of Plaintiff Jonathan Gomez Rivera**

14    84.    Stemilt is without sufficient facts to form a belief as to the truth or falsity of

15    this allegation, and such allegation is accordingly denied.

16    85.    Stemilt is without sufficient facts to form a belief as to the truth or falsity of

17    this allegation, and such allegation is accordingly denied.

18    86.    Admit.

19    87.    Admit.

20    88.    Admit.

21

ANSWER TO COMPLAINT - 12
052556.007 \ 28310638v1

89.     Stemilt admits that Plaintiff Gomez Rivera was provided free housing at the housing facilities in Ice Harbor that were licensed for 200 residents.  Stemilt denies that such facilities are fairly described as a "labor camp".

90.     Stemilt is without sufficient facts to form a belief as to the truth or falsity of this allegation, and such allegation is accordingly denied.

91.     Stemilt admits that Plaintiff Gomez Rivera traveled to work at Stemilt's orchards in Mattawa and Othello on 16 occasions in 2017. Stemilt is without knowledge of whether he rode on a Stemilt bus.

92.     Stemilt has no record or knowledge of Plaintiff Gomez Rivera "repeatedly" asking about his "new work permit".  Stemilt affirmatively states that his visa for the second contract would have been provided to him within a reasonable period of time after it was received from the United States government. The allegation that Stemilt knowingly or intentionally delayed providing Plaintiff Gomez Rivera with his visa for the second contract is denied as baseless.

93.     Stemilt is without sufficient facts to form a belief as to the truth or falsity of this allegation, and such allegation is accordingly denied.

94.     Stemilt is checking to see if there is a record of whether or when Plaintiff Gomez Rivera was provided his visa for the second contract, and the related question of whether he abandoned the contract and left Stemilt's employment and housing prior to

ANSWER TO COMPLAINT - 13
052556.007 \ 28310638v1

STOKES LAWRENCE
VELIKANJE MOORE & SHORE
120 N. NACHES AVENUE
YAKIMA, WASHINGTON 98901-2757
(509) 853-3000

Stemilt's receipt of such visa.   In the absence of such information, this allegation is denied.

95.    Stemilt is without sufficient facts to form a belief as to the truth or falsity of this allegation, and such allegation is accordingly denied.

96.    Deny.

97.    Deny.

98.    Deny.

99.    Deny.

100.    Deny.

101.    Deny.

102.    Deny.

103.    Deny that Plaintiff Gomez Garcia was ever paid less than precisely the sum of the piece rate wages he generated, plus rest break pay, or AEWR for all hours worked, whichever was higher.

104.    Deny.

105.    Stemilt is without sufficient facts to form a belief as to the truth or falsity of this allegation, and such allegation is accordingly denied.

106.    Deny.

107.    Deny.

108.    Deny.

ANSWER TO COMPLAINT - 14
052556.007 \ 28310638v1

1    109.  Deny.

2    110.  Deny.

3    111.  Deny.

4    112.  Deny.

5    113.  Deny.

6                       **CLASS ACTION ALLEGATIONS**

7    **A. "TVPA Class"**

8    114.  Stemilt denies that Plaintiffs are "similarly situated" to "All Mexican

9    nationals employed at Stemilt Ag Services, LLC in Washington, pursuant to the 2017 H-

10   2A contract from August 14 through November 15, 2017."

11   115.  Deny.

12   116.  Admit.

13   117.  Paragraph 117 and its subparts are denied in their entirety.

14   118.  Paragraph 118 and its subparts are denied in their entirety.

15   119.  Deny.

16   **B.  "Wait Time Class"**

17   120.  Stemilt denies that Plaintiffs are "similarly situated" to "All Mexican

18   nationals employed at Stemilt Ag Services, LLC in Washington, pursuant to the 2017 H-

19   2A contracts from January 16 through November 15, 2017, who traveled on Stemilt buses

20   to other Stemilt orchards for work".

21

ANSWER TO COMPLAINT - 15
052556.007 \ 28310638v1

STOKES LAWRENCE
VELIKANJE MOORE & SHORE
120 N. NACHES AVENUE
YAKIMA, WASHINGTON 98901-2757
(509) 853-3000

121.   Stemilt admits that the purported class is large.   Stemilt denies that class treatment is appropriate.

122.   Admit.

123.   Paragraph 123 and its subparts is denied in its entirety.

124.   Deny. This question of law is facially inconsistent with the definition of the purported class.

125.   Deny.

### CAUSES OF ACTION

### COUNT ONE
**Trafficking Victims Protection Act - 18 U.S.C. §1589 (a)(4)**
**(Asserted by the TVPA Class)**

126.   Paragraph 126 is a purported (and incomplete) statement of law that requires no response other than that the law speaks for itself.

127.   Deny.

### COUNT TWO
**Trafficking Victims Protection Act - 18 U.S.C. § 1589(a)(3)**
**(Asserted by the TVPA Class)**

128.   Paragraph 128 is a purported (and incomplete) statement of law that requires no response other than that the law speaks for itself.

129.   Deny.

ANSWER TO COMPLAINT - 16
052556.007 \ 28310638v1

**STOKES LAWRENCE**
**VELIKANJE MOORE & SHORE**
120 N. NACHES AVENUE
YAKIMA, WASHINGTON 98901-2757
(509) 853-3000

1

**COUNT THREE**
**Trafficking Victims Protection Act - 18 U.S.C. § 1589(a)**
**(Asserted by the TVPA Class)**

2

3      130.    Paragraph 130 is a purported (and incomplete) statement of law that requires

4    no response other than that the law speaks for itself.

5      131.    Deny.

6

**COUNT FOUR**
**Washington Law Against Discrimination- RCW 49.60.180(3)**
**(Asserted by the TVPA Class)**

7

8      132.    Deny.

**COUNT FIVE**
**Breach of Contract**
**(Asserted by the TVPA Class)**

9

10

11      133.    Deny.

      134.    Deny.

12

13      135.    Deny.

      136.    Deny.

14

**COUNT SIX**
**Willful Refusal to Pay Wages - RCW 49.52.050(2)**
**Asserted by the Wait Time Class**

15

16

17      137.    Deny.

      138.    Deny.

18

19      Wherefore, having fully responded to the Plaintiffs' allegations and claims, and by

20    way of further and affirmative pleading, Defendant answers further as follows:

21

ANSWER TO COMPLAINT - 17
052556.007 \ 28310638v1

1       1.    Plaintiffs abandoned their employment with Stemilt on or about October 19, 2017.

2.    Plaintiffs acted in concert with other persons to knowingly, unlawfully, and by means of deceit, secure employment with other employers in the United States.

3.    Upon information and belief, Plaintiffs acted in concert with other persons to intentionally slow the pace of work for themselves and others around them. The purpose of such effort was to exploit the absence of a firm productivity standard in the job order and to obtain the benefit of a guaranteed hourly rate in exchange for an intentionally sub-standard work effort.

4.    Plaintiffs and their counsel have had full opportunity to review the production and payroll records of Plaintiffs and all other H-2A workers from 2017. The claim at paragraph 134 that Stemilt did not pay its H-2A workers the piece rate enumerated in the job order is without basis in fact and made in bad faith.

5.    Plaintiffs and their counsel have had full opportunity to interview workers and to obtain documents from Stemilt and from government agencies.  The claim at paragraph 131 that Stemilt retained the work permits of H-2A workers to restrict their liberty to move in order to obtain and maintain the continued labor of its workers, in addition to being nonsensical, is not reasonably based in fact or law and is made in bad faith.

ANSWER TO COMPLAINT - 18
052556.007 \ 28310638v1

**STOKES LAWRENCE**
**VELIKANJE MOORE & SHORE**
120 N. NACHES AVENUE
YAKIMA, WASHINGTON 98901-2757
(509) 853-3000

6.    Plaintiffs themselves are named Intervenor Plaintiffs in the matter of *Renteria v. Stemilt*, pending under matter number 18-2-00471-8 in The Superior Court for Chelan County.  In such case, Plaintiffs seek an award of damages for a range of what Plaintiffs call "non-productive" time – which includes purported "bus waiting" time.   In addition to being inappropriate for supplemental jurisdiction, Count Six in this action inappropriately duplicates the claims and the relief requested by Plaintiffs in the *Renteria* matter.

7.    Plaintiffs and their counsel in this case have articulated a class composed of "All Mexican nationals employed at Stemilt Ag Services, LLC in Washington, pursuant to the 2017 H-2A contract from August 14 through November 15, 2017".  Plaintiffs and their counsel, through their diligent pre-lawsuit inquiries, know full well that: a) the three bin daily goal was communicated to all apple pickers, regardless of visa status or nationality; and b) that Stemilt's force of domestic (non-H-2A) workers were predominantly composed of persons who were born in Mexico and/or maintain Mexican citizenship.   The allegation at paragraph 132 that Stemilt created a hostile work environment based on national origin is without basis in fact and is made in bad faith.

Wherefore, having fully answered Plaintiffs' Complaint, Stemilt submits the following:

REQUEST FOR RELIEF

1.  For the dismissal of this action with prejudice.

ANSWER TO COMPLAINT - 19
052556.007 \ 28310638v1

STOKES LAWRENCE
VELIKANJE MOORE & SHORE
120 N. NACHES AVENUE
YAKIMA, WASHINGTON 98901-2757
(509) 853-3000

1

2.  For an award of fees as to the allegations and claims for which there was no

2

reasonable basis in fact or law.

3

3.  For such other and further relief as the Court may find just and equitable.

4

DATED this 11th day of August, 2020.

5

STOKES LAWRENCE
VELIKANJE MOORE & SHORE

6

7

By:  */s/ Brendan V. Monahan*

8

Brendan V. Monahan (WSBA #22315)
Lance A. Pelletier (WSBA #49030)

9

Attorney for Defendant
Stokes Lawrence Velikanje

10

Moore & Shore
120 N. Naches Avenue

11

Yakima, WA  98901-2757
Telephone:  (509) 853-3000

12

Fax:  (509) 895-0060
Email:  bvm@stokeslaw.com

13

lance.pelletier@stokeslaw.com

14

15

16

17

18

19

20

21

ANSWER TO COMPLAINT - 20
052556.007 \ 28310638v1

1

## <u>CERTIFICATE OF SERVICE</u>

2

I hereby certify that on August 11th, 2020, I caused the foregoing document to be:

3

X    electronically filed with the Clerk of the Court using the CM/ECF system which
will send notification of such filing to the following:

4

5

Maria Diana Garcia            diana.garcia@columbialegal.org

6

Joachim Morrison              joe.morrison@columbialegal.org
Alfredo Gonzalez Benitez      alfredo.gonzalez@columbialegal.org

7

T. David Copley               dcopley@kellerrohrback.com
Laura R. Gerber               lgerber@kellerrohrback.com

8

9

*/s/ Brendan V. Monahan*
Brendan V. Monahan (WSBA #22315)

10

Attorney for Defendant
Stokes Lawrence Velikanje Moore & Shore

11

120 N. Naches Avenue
Yakima, WA  98901-2757

12

Telephone:  (509) 853-3000
Fax:  (509) 895-0060

13

Email: bvm@stokeslaw.com

14

15

16

17

18

19

20

21

ANSWER TO COMPLAINT - 21
052556.007 \ 28310638v1

**STOKES LAWRENCE**
**VELIKANJE MOORE & SHORE**
120 N. NACHES AVENUE
YAKIMA, WASHINGTON 98901-2757
(509) 853-3000