FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 20, 2021

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| GILBERTO GOMEZ GARCIA, as an individual and on behalf of all other similarly situated persons, and JONATHAN GOMEZ RIVERA, as an individual and on behalf of all other similarly situated persons,<br><br>　　　　　　　Plaintiffs,<br><br>　　v.<br><br>STEMILT AG SERVICES LLC,<br><br>　　　　　　　Defendant. | No.　2:20-cv-00254-SMJ<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION** |

Before the Court is Plaintiffs' Motion for Class Certification, ECF No. 63. The Court heard oral argument in this matter and has considered the parties' briefing and exhibits. As defense counsel put it at the hearing, "[t]his case is an untidy sprawling mess" of facts, procedural issues, and substantive law. Tr. (Aug. 4, 2021). This is not "a simple case with a straightforward resolution." *Id.* Nor, as the Court will explain, does this case—which is plagued by individual issues—generally lend itself to class-wide resolution. The Court thus declines to certify Plaintiffs' three proposed classes. However, as explained below, it does certify a subclass for a

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR
CLASS CERTIFICATION – 1

portion of Plaintiffs' Farm Labor Contractor Act (FLCA) claims.

## BACKGROUND

**A.    Plaintiffs' Claims**

This case concerns Plaintiffs' allegations that Defendant imposed a productivity requirement that was not disclosed in the workers' contracts, discriminated against foreign H-2A workers, threatened to blackball them or force them to leave the country, and did not pay them wages owed. Altogether, Plaintiffs' Third Amended Complaint brings three claims under the Trafficking Victims' Protection Act (TVPA) (18 U.S.C. §§ 1589(a)(3),(4) and 1592(a)), a claim under the Washington Law Against Discrimination (WLAD) (Wash. Rev. Code § 49.60.180(3)), a breach of contract claim, FLCA claims (a single count alleging violations of Wash. Rev. Code §§ 19.30.120(2), 19.30.110(5), 19.30.110(7)(h), 19.30.110(7), and 19.30.110(2)), a willful refusal to pay wages claim (Wash. Rev. Code § 49.52.050(2)), and an alienage discrimination claim (42 U.S.C. § 1981). ECF No. 171.

Plaintiffs' claims arise from one or both of two H-2A Clearance Orders—from January 2017 and August 2017—and the labor performed thereunder. ECF No. 171. Neither contract included minimum production standards, although they did require workers to "work at a sustained pace and make bona-fide efforts to work efficiently and consistently that are reasonable under the climactic and other

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION – 2

working conditions." *See* ECF No. 97-1 at 17; ECF No. 97-2 at 15. The second contract also provided:

> If the Worker is consistently unable to perform their duties in a timely and proficient manner consistent with applicable industry standards, considering all factors, they will be provided training in accordance with Employer's progressive discipline standards, including verbal instruction, written warnings, time off, or other coaching or instruction to teach the worker to work more efficiently. If performance does not improve after coaching and several warnings, the Worker may be terminated. These standards are not linked to any specific productivity measure and apply equally to if the Worker is working on an hourly and/or piece rate basis.

*See* ECF No. 97-2 at 20. Defendant used a uniform disclosure form, signed by Andy Gale, Defendant's General Manager. *See* ECF Nos. 69-15, 69-16. These forms did not include a daily production standard or provide for discipline stemming from failing to comply with any such standard. *See* ECF Nos. 69-15, 69-16. The 1,100 workers employed under the contracts worked at thirty-six orchards in three primary areas: Tri-Cities, Mattawa, and Wenatchee/Quincy. *See* ECF No. 68-2.

During that time, Gale was Defendant's General Manager, and Robin Graham was his Assistant Operations Manager. Five area managers reported to Gale and Graham. *See* ECF No. 68-6. One of the area managers, Juan Cuevas, has described that:

> Orchard management at Stemilt is fairly consistent at its different orchards. Each orchard is managed by a single ranch manager, followed by one or more assistant managers (also referred to as a foreman). Under the assistant managers are supervisors. Supervisors

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION – 3

oversee a handful of crews. Each crew is managed by a crew leader. Crews are comprised of 10-20 workers.

ECF No. 69-17 at 3.

Plaintiffs allege that after an upper management meeting in September 2017, Gale "blurted out that from now on all H-2A workers 'had to pick three bins a day or they will go back to Mexico." ECF No. 68-3 at 4; ECF No. 68-4 at 4. Graham added, "We don't care what the variety is, it's three bins a day." ECF No. 68-3 at 4; ECF No. 68-4 at 4. A few days later, Graham sent an email to all area managers, with the subject line "**Please Review: New Policy**," stating in pertinent part:

Beginning with our next pay period, all employees who have completed the training period should be producing a minimum average of 3 bins in an 8hr shift. If employees do not fulfill this requirement, they should be receiving a progressive disciplinary action due **to *not following the supervisor's instructions***, rather than low production.

Can you please share this message with your supervisors and crew bosses. Tomorrow we should begin to deliver this expectation to our pickers verbally in field meetings. It is important we structure these discussions with a couple of points:

• Explain the background of the need for the change, the "why", before we announce this policy.
• Let's keep the tone of these meetings at a "coaching" level. We don't want these to be confrontational.
• We need to recognize there are many who are doing a great job, we really appreciate that good job, but some are dragging the whole group down.
• When we talk to the groups, it is important that we talk around the pace of harvest rather than production.

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION – 4

> If conditions arise that are out of the pickers control which keep them from reaching this minimum we should not discipline. Area managers should review these write-ups.
>
> Don't hesitate to contact HR or me or Andy if you have any questions.

ECF No. 68-8 at 2 (emphasis in original).[1] Cuevas asked Graham to confirm whether the policy applied to all apple varieties, and Graham responded: "Yes. All varieties. Just giving you guys another option for discipline." ECF No. 68-9 at 2.

After the policy was put in place, Defendant's HR division allegedly created a uniform productivity warning form that was disseminated to all ranch managers. ECF No. 68-3 at 5; ECF No. 68-4 at 5. The form purportedly stated that if a worker received three warnings, they would be fired, sent back to Mexico, and become ineligible to work for Defendant in the future. ECF No. 68-3 at 5; ECF No. 68-4 at 5.[2] Plaintiffs claim that warnings "began flooding in" from the Tri-Cities and Mattawa area orchards, and that the Wenatchee/Quincy orchards punished workers who did not meet the productivity standards by requiring them to return to their housing for the day. ECF No. 63 at 11–12 (citing ECF No. 68-3 at 5; ECF No. 68-

---

[1] This policy was put into place despite Hernandez's warning to "not use productivity standards as a reason for disciplinary actions; it will be out of compliance [with H-2A regulations]." ECF No. 68-7 at 2.

[2] The H-2A workers' visas "exclusively authorized them to work for Stemilt." ECF No. 63 at 9. "Stemilt Human Resources staff, including the person responsible for recruitment in Mexico, knew that H-2A workers were generally concerned about being fired because 'it would result in them being blacklisted and not being able to return as an H-2A worker to the United States.'" *Id.* (quoting ECF No. 68-3 at 5; ECF No. 68-4 at 5).

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION – 5

4 at 5). Plaintiffs claim these warnings were disproportionately issued to H-2A workers. ECF Nos. 118, 118-1.[3] Plaintiffs also allege that ranch and orchard managers "routinely threatened to fire and blacklist H-2A workers from future employment in the United States if they failed to meet Stemilt's unlawful daily production standards." ECF No. 63 at 12; *see also* ECF No. 68-14 at 3 (internal investigation by Defendant noting allegations that supervisors threatened to send workers back to Mexico and that a supervisor "walks around waving the corrective action book in a threating manner"); *see, e.g.*, ECF No. 68-11 (describing implementation of the production standard at one of Defendant's orchards). But Defendant contends that Area Managers and Ranch Managers exercise discretion and that each orchard's response to Graham's email differed. ECF No. 99 at 11; *see also* ECF No. 96 at 14–15; ECF No. 102-23 at 5–6; ECF No. 102-24 at 6–8; ECF No. 102-27 at 5–9. Defendant also contends that although many workers failed to meet the three-bin-a-day standard, relatively few were written up or fired. ECF No. 99 at 11; *see also* ECF No. 104.

In addition to their claims regarding the alleged production quota policy, Plaintiffs also allege that Defendant withheld updated work permits from class

---

[3] Defendant argues that because these statistics include *all* types of warnings, not just warnings for failing to comply with the productivity standards, they are not persuasive. ECF No. 103. For the reasons explained below, the Court need not reach this issue to decide whether to certify Plaintiffs' proposed classes.

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION – 6

members to prevent them from leaving Defendant's property. Plaintiffs claim that Defendant received renewed work permits—for the August contract—at the end of August, but Defendant instructed HR staff not to give them to H-2A workers to prevent them from quitting. ECF No. 63 at 17; *see also* ECF No. 68-3 at 7; ECF No. 68-4 at 7; ECF No. 68-18 at 4–5; ECF No. 69-3 at 7; ECF No. 69-11 at 3–4.

Plaintiffs also allege that supervisors "made disparaging comments regarding the H-2A workers' nationality," including calling them "stupid Mexicans," saying that Mexicans were not good for anything, stating that because individuals were from Arandas, Jalisco, Mexico, they were not good workers, and calling the H-2A workers lazy. ECF No. 63 at 18.

Further, Plaintiffs allege that Defendant regularly transported H-2A workers to other orchards via bus. When the bus arrived, the workers had to wait before beginning work, and at the end of the day, they had to wait before being transported back. ECF No. 63 at 19; *see also* ECF No. 66 at 8; ECF No. 67 at 7. These waits could be up to an hour or more. ECF No. 63 at 19; *see also* ECF No. 66 at 8; ECF No. 67 at 7. Workers were not paid for these waiting periods, as Defendant admits. ECF No. 63 at 19; *see also* ECF No. 66 at 8; ECF No. 67 at 7; ECF No. 99 at 28.

**B.    Fraud by Defendant's Employees**

Complicating matters in this case is a supposed scheme by two of Defendant's former employees. HR employee Elizabeth Hernandez and her

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION – 7

assistant, Christina Medrano headed Defendant's H-2A program, including training, and recruitment. ECF No. 68-3 at 2; ECF No. 68-4 at 2. This role required them to understand the legal requirements of the H-2A program. ECF No. 68-3 at 2; ECF No. 68-4 at 2. Medrano and Hernandez allegedly secretly created their own H-2A vendor, H2Global. Hernandez requested that Defendant approve a new vendor, Evergreen Agricultural Services, LLC, for H-2A visa processing. ECF No. 97 at 6. Defendant did so. *Id*. Evergreen in turn outsourced the work to H2Global— thereby charging Defendant for work that it was paying them to perform as a part of their job. *See id.* at 8.

Defendant contends that Hernandez would have closed-door meetings with H-2A workers at odd hours, excluding Defendant's other employees. They allege she "told workers that they didn't need to worry about how many bins they picked because they were guaranteed to be paid a high hourly rate, regardless of how hard they worked." ECF No. 99 at 6–7. This, Defendant contends, caused lower productivity than in other years. *Id.* at 7. And workers—including Plaintiff Gomez Garcia—were "brazenly refusing to take instruction, saying instead that Ms. Hernandez told them they didn't need to work in a particular manner and/or that their supervisor's discipline didn't matter because Ms. Hernandez would take care of it." *Id.* at 8; *see also* ECF No. 96 at 9; ECF No. 97 at 7.

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION – 8

Hernandez and Medrano were eventually discovered and subsequently terminated. ECF No. 97 at 8–9. On the night of their termination, Defendant asserts that Plaintiff Gomez Rivera, along with declarant Jose Ramirez Garcia met with Hernandez and one of Evergreens owners. ECF No. 99 at 14; ECF No. 102-4 at 32–35. They then abandoned their employment with Defendant, along with other workers, including Plaintiff Gomez Garcia. ECF No. 97 at 9. Although Defendant offered to address any concerns, those workers refused. *Id.* at 10–11. Plaintiffs argue that there is no evidence that they conspired with Hernandez and that they met with union organizers *after* leaving Defendant's employment. ECF No. 144 at 15. But they do not provide evidence for this contention, other than a Declaration which the Court struck. *See id*; *see also* ECF Nos. 145, 168.

## LEGAL STANDARD

"A representative plaintiff may sue on behalf of a class when the plaintiff affirmatively demonstrates the proposed class meets the four threshold requirements of Federal Rule of Procedure 23(a): numerosity, commonality, typicality, and adequacy of representation." *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1002 (9th Cir. 2018), *cert. dismissed*, 139 S. Ct. 1651 (2019). "Additionally, a plaintiff seeking certification under Rule 23(b)(3) must demonstrate that 'questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION – 9

superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Id.* (quoting Fed. R. Civ. P. 23(b)(3)).

"[B]efore certifying a class, the trial court must conduct a rigorous analysis to determine whether the party seeking certification has met the prerequisites of Rule 23." *Id.* at 1004 (quoting *In re Hyundai & Kia Fuel Econ. Litig.*, 881 F.3d 679, 690 (9th Cir. 2018), *vacated on other grounds on reh'g en banc*, 926 F.3d 539 (9th Cir. 2019)). As the proponents of class certification, Plaintiffs must identify a path to offering class-wide proof and provide sufficient evidence to establish their claims. *See Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). The ultimate decision to certify a class is within the Court's discretion. *See Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009).

A district court should normally not decide the merits of a factual or legal dispute before it grants class certification. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78 (1974); *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union v. ConocoPhillips Co.*, 593 F.3d 802, 808–09 (9th Cir. 2010). But a district court "*must* consider the merits [of class members' substantive claims] if they overlap with the Rule 23(a) requirements." *Ellis v. Costco Wholesale Corp.* ("*Ellis I*"), 657 F.3d 970, 981 (9th Cir. 2011) (emphasis in original); *see also Sali*, 909 F.3d at 1005 (the Court

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION – 10

"need only consider material sufficient to form a reasonable judgment" as to these requirements (internal quotation omitted)).

## DISCUSSION

Plaintiffs' class certification attempt has several fatal flaws. Foremost, they cannot meet Rule 23(a)(3)'s typicality requirement or Rule 23(b)(3)'s predominance requirement for most of their claims. Because Plaintiffs' bid for class certification fails on these grounds, the Court need not address the other Rule 23 requirements as to those claims. However, as explained below, the Court certifies a small subset of Plaintiffs' FLCA claims under Section 19.30.110(7). The Court thus discusses each requirement in turn as to those claims.

## A.    Typicality

Fed. R. Civ. P. 23(a)(3) requires that the claims or defenses of the named representatives be typical of those of the class, in order to protect the interests of all class members. Typicality is met if the representative plaintiffs' claims arise from the same practice or course of events as those of the class members. *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1019 (9th Cir. 2011), *abrogated on other grounds by Comcast Corp.*, 569 U.S. 27. Courts consider "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125,

1141 (9th Cir. 2016) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).

"Ultimately, representatives' class claims are typical if they are 'reasonably co-extensive with those of absent class members; they need not be substantially identical.'" *Rosas v. Sarbanand Farms, LLC*, 329 F.R.D. 671, 686 (W.D. Wash. 2018) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)). "The commonality and typicality requirements . . . 'tend to merge.'" *Meyer v. Portfolio Recovery Assocs. LLC*, 707 F.3d 1036, 1041 (9th Cir. 2012) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 n.5 (2011)).

## 1.    FLCA Disclosure Claims

Plaintiffs assert, in a single cause of action, that Defendant violated five subsections of the FLCA, Wash. Rev. Code §§ 19.30.120(2), 19.30.110(5), 19.30.110(7)(h), 19.30.110(7), and 19.30.110(2).

Relevant here, Section 19.30.110 requires every farm labor contractor to "(2) [d]isclose to every person with who he or she deals in the capacity of a farm labor contractor the amount of his or her bond and the existence and amount of any claims against the bond," to "(5) [c]omply with the terms and provisions of all legal and valid agreements and contracts entered into between the contractor in the capacity of a farm labor contractor and third persons," and to "(7) . . . furnish to each worker, at the time of hiring, recruiting, soliciting, or supplying, whichever occurs first, a

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION – 12

written statement in English and any other language common to workers who are not fluent or literate in English," including "(h) [t]he name and address of the owner of all operations, or the owner's agent, where the worker will be working as a result of being recruited, solicited, supplied, or employed by the farm labor contractor."

Section 19.30.120(2) prohibits farm labor contractors from "[m]ak[ing] or caus[ing] to be made, to any person, any false, fraudulent, or misleading representation, or publish or circulate or cause to be published or circulated any false, fraudulent, or misleading information concerning the terms or conditions or existence of employment at any place or places, or by any person or persons, or of any individual or individuals."

Under FLCA, a farm labor contractor is "any person, or his or her agent or subcontractor, who, for a fee, performs any farm labor contracting activity." Wash. Rev. Code § 19.30.010(5). "'Farm labor contracting activity' means recruiting, soliciting, employing, supplying, transporting, or hiring agricultural employees." Wash. Rev. Code § 19.30.010(4).

Defendant argues that named Plaintiffs were given proper FLCA disclosures, and thus their non-existent claims under Sections 19.30.110(2), 19.30.110(7)(h), and 19.30.110(7) ("FLCA Disclosure Claims") are not typical of the claims of the class. "That a suit may be a class action adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they

personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 n.6 (2016) (internal quotation and alteration omitted). Plaintiffs must show that they have suffered an injury in fact "for each claim that they press and for each form of relief that they seek." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

### a.    Workers Who Worked Only on the Second Contract

First, the Court finds that named Plaintiffs do not have standing to assert FLCA Disclosure Claims on behalf of those workers who only worked on the second H-2A contract. Plaintiffs claim that those workers *received* a disclosure for the second contract, but that the disclosure was deficient. On the other hand, Plaintiffs claim that workers who worked under both contracts received a disclosure *only* at the time of the first contract and should have received a second disclosure under the second contract. *See* Tr. (Aug. 4, 2021); *see also* ECF Nos. 96-10, 96-11. Even though the disclosures given at the time of each contract were identical, this key difference between the claims of the two subsets of workers make named Plaintiffs atypical representatives. *See* Tr. (Aug. 4, 2021); *see also Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 159 (1982) (declining to allow a "wholesale expansion of class action litigation" to an "across-the-board attack."). Their claims are not

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION – 14

1  "reasonably co-extensive." *Rosas*, 329 F.R.D. at 686 (quoting *Hanlon*, 150 F.3d at

2  1020).

### b.    Workers Who Worked Under Both Contracts

4        The Court next turns to whether named Plaintiffs have standing to assert their

5  FLCA Disclosure Claims on behalf of those workers who worked under both

6  contracts. Defendant argues that Plaintiffs' FLCA Disclosure Claims are legally and

7  factually baseless, as well as time barred. *See* ECF No. 189 at 2. The Court has

8  previously ruled that FLCA Disclosure Claims arising out of the first H-2A contract

9  are time-barred. *See* ECF No. 153 at 7. Accordingly, Plaintiffs' claims related to the

10  substance of the FLCA disclosure that they *did* receive at the time of the first

11  contract are time barred. *See* ECF Nos. 96-10, 96-11.

12        Yet those FLCA Disclosure Claims, specifically those under Section

13  19.30.110(7), which arise out of Plaintiffs' claims that they should have received a

14  second disclosure at the time of the second contract are not time barred. Plaintiffs

15  argue that whether or not Defendant was required to provide a second disclosure is

16  a merits questions better resolved after certification, at the motion for summary

17  judgment stage. *See* ECF No. 190 at 2. Defendant responds that the Court's

18  "rigorous analysis" requires it to consider the merits on issues such as these. ECF

19  No. 189 at 4 (citing *Comcast Corp.*, 569 U.S. at 34 (requiring "precisely that

20  inquiry" at the class certification stage)); *see also Ellis I*, 657 F.3d at 981 (A district

court "*must* consider the merits [of class members' substantive claims] if they overlap with the Rule 23(a) requirements." (emphasis in original)).

As to this claim, though, Plaintiffs have standing to assert this admittedly novel legal theory. Although they may not eventually prevail, the claims of all workers who worked under both contracts are co-extensive, given that Defendant admits that it did not provide a second disclosure to any worker who worked under both contracts. *See East Tex. Motor Freight Sys. v. Rodriguez*, 431 U.S. 395, 403–04 (1977) (proposed representative must "possess the same interest and suffer the same injury" as the class members). Either all the workers who worked under both contracts suffered an injury, or none did.

Thus, for this narrow subset of Plaintiffs' FLCA Disclosure Claims, the Court declines to bar certification on this ground, and declines to reach the merits of these claims at the class certification stage.

### 2. Unique Defenses

Defendant next argues that named Plaintiffs will be subject to unique cross-examination that prevent them from adequately representing the interests of the class and make them atypical representatives. "[W]hen named plaintiffs are subject to unique defenses which could skew the focus of the litigation, district courts properly exercise their discretion in denying class certification." *Alaska v. Suburban Propane Gas Corp.*, 123 F.3d 1317, 1321 (9th Cir. 1997); *see also Hanon*, 976 F.2d

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION – 16

at 508; *Koos v. First Nat'l Bank of Peoria*, 496 F.2d 1162, 1164 (7th Cir.1974) ("Where it is predictable that a major focus of the litigation will be on an arguable defense unique to the named plaintiff or a small subclass, then the named plaintiff is not a proper class representative."); *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir.1990), *abrogated on other grounds by Microsoft Corp. v. Baker*, 137 S. Ct. 1702, 1712 n. 8 (2017); *J.H. Cohn & Co. v. Am. Appraisal Assocs.*, 628 F.2d 994, 999 (7th Cir.1980) ("[E]ven an arguable defense peculiar to the named plaintiff or a small subset of the plaintiff class may destroy the required typicality of the class as well as bring into question the adequacy of the named plaintiff's representative."). But "[s]imply asserting an affirmative defense, without more, does not undermine typicality." *Kihn v. Bill Graham Archives, LLC*, 445 F. Supp. 3d 234, 247 (N.D. Cal. 2020), *petition granted*, No. 20-80076, 2020 U.S. App. LEXIS 38481 (9th Cir. Dec. 9, 2020).

The unusual backstory in this case, Defendant argues, makes named Plaintiffs atypical class representatives. As described above, Defendant alleges that two of its employees, Hernandez and Medrano, defrauded Defendant by outsourcing the work for which Defendant paid them to a company which they started for the sake of the scheme. Defendant also alleges that certain workers, including named Plaintiffs, had an especially close relationship with Hernandez and Medrano—and for that

reason have interests contrary to the class members. Defendant argues that this "subset either conspired to or was manipulated into abandoning their employment with the perpetrators of an elaborate scheme to defraud Stemilt." ECF No. 99 at 30. They add that "substantial evidence" ties Plaintiff Gomez Garcia to Hernandez after the termination, and that Plaintiff Gomez Rivera coordinated with Hernandez and Evergreen to illegally obtain employment in the United States. *Id.* at 30–31; *see also id.* at 8 n.1; ECF No. 93 at 2–3 (Ana Guerrero, one of Defendant's employees remembers Plaintiff Gomez Rivera saying that the workers "only had to listen to our Human Resources manager, Elizabeth Hernandez," and that he encouraged other workers to work slower); ECF No. 102-28 at 4 (Plaintiff Gomez Rivera met privately with Hernandez and was rude to other staff, saying Hernandez "would always find work for them no matter what they did").[4] When named Plaintiffs left their employment with Defendant, Defendant contends they began to work for Evergreen. *See* ECF No. 99 at 14; *see also* ECF No. 98-2 at 47; ECF No. 102-4 at 32–39.

---

[4] Defendant also contends that its investigation of these connections has been stymied by the fact that Plaintiff Gomez Garcia has thrown away three of his phones since 2016, his current phone has been damaged, and he has not preserved his communications after retaining counsel in October 2017. ECF No. 99 at 31 (citing ECF No. 98-1 at 12–13). Similarly, Defendant contends that Plaintiff Gomez Rivera sold his cell phone at approximately the same time he retained counsel in this case. *Id.* (citing ECF No. 98-2 at 61–63).

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION – 18

The Court determines that Defendant's contentions are arguable and finds these issues relevant to the claims asserted by the TVPA class and to the FLCA claims under Sections 19.30.110(5) and 19.30.120(2) ("FLCA Contract Claims"). The circumstances under which Plaintiffs left Defendant's employment and evidence regarding their productivity may undermine named Plaintiffs' contentions under these claims, which are explained more thoroughly below. Plaintiffs will likely be subjected to cross-examination about these issues that do not apply to other members of the class. This will likely "skew the focus of the litigation." *Alaska*, 123 F.3d at 1321. Thus, Plaintiffs are not typical or adequate representatives as to those claims. But the Court does not find these unique defenses and subjects of cross-examination relevant to the wait-time claims or the remaining FLCA Disclosure Claims, and so concludes that named Plaintiffs are adequate and typical representatives for those claims.

## B. Predominance

Rule 23(b)(3) requires a court finding that "the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). "Rule 23(b)(3)'s predominance inquiry is 'far more demanding' than Rule 23(a)'s commonality requirement." *Sali*, 909 F.3d at 1008 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624 (1997)). "When evaluating predominance, 'a court has a duty to take a close look at whether common

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION – 19

1  questions predominate over individual ones,' and ensure that individual questions

2  do not 'overwhelm questions common to the class.'" *Id.* (quoting *In re Hyundai*, 881

3  F.3d at 691). "The main concern of the predominance inquiry under Rule 23(b)(3)

4  is 'the balance between individual and common issues.'" *Id.* (quoting *Wang v.*

5  *Chinese Daily News, Inc.*, 737 F.3d 538, 545–46 (9th Cir. 2013)).

6      **1.    TVPA Class**

7          **a.    TVPA Claims One and Two**

8      The TVPA prohibits a person from obtaining labor or services through

9  "abuse or threatened abuse of law or legal process . . . in any manner or for any

10  purpose for which the law was not designed, in order to exert pressure on another

11  person to cause that person to take some action or refrain from taking some action."

12  18 U.S.C. § 1589(a)(3), (c)(1). It also prohibits a person from providing or obtaining

13  labor or services through use of "any scheme, plan, or pattern intended to cause the

14  person to believe that, if that person did not perform such labor or services, that

15  person or another person would suffer serious harm or physical restraint." 18 U.S.C.

16  § 1589(a)(4). The TVPA defines "serious harm" as "any harm, whether physical or

17  nonphysical, . . . that is sufficiently serious, under all the surrounding

18  circumstances, to compel a reasonable person of the same background and in the

19  same circumstances to perform or to continue performing labor or services in order

20  to avoid incurring that harm." 18 U.S.C. § 1589(c)(2).

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR
CLASS CERTIFICATION – 20

Plaintiffs allege that Robin Graham's September 2017 email established Defendant's policy that each employee pick an average of three bins per day, and that issues related to this common policy predominate over individual issues. ECF No. 63 at 28. Defendant responds that the email vested discretion with individual supervisors, and so the email does not present evidence of a common answer. "On its face, of course, [a policy of vesting discretion in regional supervisors] is just the opposite of a uniform employment practice that would provide the commonality needed for a class action; it is a policy *against having* uniform employment practices." *Wal-Mart Stores, Inc.*, 564 U.S. at 355 (emphasis in original).

The email directs "progressive disciplinary action due to not following the supervisor's instructions, rather than low production," if the standard was not met. ECF No. 68-8 at 2 (emphasis omitted). It directed the supervisors, crew bosses and managers to verbally inform workers of the new expectations the next day by explaining the "why" of the policy. *Id*. The email directed that the supervisors keep the "tone . . . at a 'coaching' level" and to avoid being "confrontational." *Id*. The email also directs that "[i]f conditions arise that are out of the pickers['] control which keep them from reaching this minimum," they should not discipline the workers. *Id*. On its face, this email gives supervisors discretion to enforce the policy as they saw appropriate.

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION – 21

Plaintiffs have presented evidence that Graham's email establishes a common policy from upper management. For example, Plaintiffs present evidence that Gale said, after an upper management meeting, that H-2A workers "had to pick three bins a day or they will go back to Mexico" and that human resources prepared a productivity write-up document for enforcement of this policy by ranch managers. ECF No. 68-4 at 4–5. They emphasize that the H-2A contracts did not contain daily production standards. *See* ECF Nos. 97-1; ECF No. 97-2; *see also* ECF Nos. 69-15, 69-16.

Defendant argues that "even if the Court accepted Plaintiffs' contention that the September 22 email created a uniform policy upon which Plaintiffs' claims might be productively litigated together, the issue of each manager's implementation—to the extent, if any, that it was implemented at all—of that policy across each of Stemilt's orchards would predominate this litigation." ECF No. 99 at 23. Defendant contends that the policy vested discretion in supervisors at each orchard. ECF No. 99 at 11; *see also* ECF No. 96 at 3; ECF No. 105 at 4. Plaintiffs point to declaration testimony of Juan Cuevas, an area manager, who described that:

> Orchard management at Stemilt is fairly consistent at its different orchards. Each orchard is managed by a single ranch manager, followed by one or more assistant managers (also referred to as a foreman). Under the assistant managers are supervisors. Supervisors oversee a handful of crews. Each crew is managed by a crew leader. Crews are comprised of 10-20 workers.

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION – 22

ECF No. 69-17 at 3. But this testimony provides little. Cuevas's description shows that the hierarchal *structure* was consistent between orchards—not the management style, policies, or other day-to-day realities.

Defendant also points to the "generalized anecdotes from a handful of workers that they allege are representative of the class as a whole." *Id.* at 24 (citing ECF Nos. 66–69). Defendant argues that the anecdotes are contradicted by declarations from other workers, are generic, represent a limited geographical area, and contain internal inconsistencies. *Id.* at 24–25. Using "representative testimony" or "aggregate proof" is not appropriate to establish class-wide liability where the violations "are not consistent across members of the putative class." *See Saucedo v. NW Mgmt. & Realty Servs.*, 290 F.R.D. 671, 680 (E.D. Wash. 2013).[5] In *Saucedo*, Plaintiffs alleged a "general policy" or "common practice" of "cheat[ing] workers out of wages owed to them" by lowering promised wage rates, shorting hours or productivity, and issuing false paystubs. *Id.* at 678. They supported their contentions with declarations from current and former workers. *Id.* at 679. The court noted that "the allegations arise from multiple incidents spanning approximately three years— each of which involved a unique misrepresentation." *Id.* In *Saucedo*, the

---

[5] *Saucedo* analyzes this issue under the commonality requirement. *See Saucedo*, 290 F.R.D. at 680. But for the reasons explained, the same analysis can be applied to the predominance element in this case.

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION – 23

misrepresentations were made by a single individual. Here, the policy and alleged discrimination were implemented by supervisors across thirty-six orchards.

Plaintiffs contend that Defendant's arguments amount to asking this Court to believe Defendant's worker declarations over Plaintiffs'. ECF No. 144 at 8. They urge the Court not to "conduct a mini-trial." *Id.* To the extent Defendant asks this Court to *weigh* the declarations, the Court agrees with Plaintiffs. But the existence of worker declarations undermining Plaintiffs' claims also undermines their uniformity, and thus predominance, contentions. Plaintiffs' contend that their declarations "include[] consistent recitations of the threats, discipline, and mistreatment of class members," ECF No. 144 at 10. But Plaintiffs must do more than provide "aggregate proof," especially given the large number of orchards where putative class members worked. *See Saucedo*, 290 F.R.D. at 680.

The issue of the implementation of the policy would predominate this litigation. This is different from *Rosas*, in which the Court found the predominance requirement met for the TVPA claims because class-wide proof could determine whether a "reasonable person in the same circumstances would be compelled to continue to work." *See Rosas*, 329 F.R.D. at 689. Given that declarants do not have knowledge of Defendant's practices at orchards other than those at which they work, and given the declarations provided by Defendant which contradict the experiences described by Plaintiffs' evidence, significant individual inquiries will

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION – 24

be required to litigate these claims.[6] As Plaintiffs described at the hearing, their evidence shows that "this new policy, *on the ground level*, turned in to threats to send the workers back to Mexico and blacklist them for future employment if they didn't meet the bin minimum." Tr. (Aug. 4, 2021). Here, a "ground-level" inquiry will be required, and "individual questions . . . 'overwhelm questions common to the class.'" *See Sali*, 909 F.3d at 1008 (quoting *In re Hyundai & Kia Fuel Econ. Litig.*, 881 F.3d at 691). A rigorous analysis does not allow the Court to conclude that the predominance requirement is met for these TVPA claims.

### b. Breach of Contract Claims

In this case, Defendant's August H-2A contracts provided that "[w]orkers must work at a sustained, vigorous pace and make bona-fide efforts to work efficiently and consistently that are reasonable under the climatic and all other working conditions." ECF No. 68-2 at 15. But Plaintiffs allege that Defendant later implemented a three-bin-per-day policy, as described above, in violation of the contract. For the reasons explained in the prior section, Plaintiffs have not met their burden of showing the predominance requirement is met as to their breach of contract claims.

---

[6] The Court also declines to carve out a subclass as to these claims. Even if common issues predominate for a subset of the class, such as those workers in the Pasco region or those who worked at a certain orchard, class certification fails in any event because named Plaintiffs are not typical representatives. *See infra.*

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION – 25

### c.    WLAD and Section 1981 Claims

WLAD prohibits employers from discriminating against a person in their terms or conditions of employment based on race or national origin.[7] Wash. Rev. Code § 49.60.180(3). A hostile work environment claim under WLAD requires the plaintiff to establish that the alleged "harassment (1) was unwelcome, (2) was because of a protected characteristic, (3) affected the terms or conditions of employment, and (4) is imputable to the employer." *Blackburn v. State Dep't of Soc. & Health Servs.*, 375 P.3d 1076, 1081 (Wash. 2016).

Plaintiffs allege that Defendant created a hostile work environment in violation of Revised Code of Washington § 49.60.180(3) when "its supervisors at the various orchards threatened to send the workers back to Mexico, told them to go back to Mexico, and focused 98% of their discipline on H-2A workers." ECF No. 63 at 18. Similarly, Plaintiffs' alienage discrimination claim under 42 U.S.C. § 1981 asserts that Defendant had a common practice of mistreating its H-2A workforce on the basis of alienage. *See* ECF No. 134 at 4.

These claims appear to present more individual issues than class-wide issues. In fact, as described above, Plaintiffs claim that the hostile work environment was created by threats from "supervisors at the various orchards" and disproportionate

---

[7] The parties disagree over whether a claim of discrimination based on visa status qualifies as national origin discrimination under WLAD. The Court need not reach the issue here.

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION – 26

discipline. ECF No. 63 at 18. Although Plaintiffs have presented some evidence that Defendant's culture of threats, emanating from upper management, was pervasive, *see* ECF No. 68-3 at 4, in the absence of a "policy" of discrimination, much of Plaintiffs' proof will need to be decentralized and individual. For example, for Plaintiffs' WLAD claims, proof that any discrimination "affected the terms or conditions of employment" would have to come from each orchard. *See Blackburn*, 375 P.3d at 1081; *see also Gen. Bldg. Contractors Ass'n, Inc. v. Penn.*, 458 U.S. 375, 391 (1982) (Section 1981 plaintiffs must show intentional discrimination, rather than disparate impact). Unless Plaintiffs can address this, the "disproportionate discipline" aspects of Plaintiffs discrimination claims appear to present predominant individual issues. There is no "evidence of a single, common policy of discrimination" that will "resolve significant issues with respect to the class as a whole." *See Parra v. Bashas', Inc.*, 291 F.R.D. 360, 390–93 (D. Ariz. 2013).

Given the rigorous class certification standards, Plaintiffs have not met their burden in showing common issues predominate for these claims. *See Sali*, 909 F.3d at 1004. Again, "individual questions . . . 'overwhelm questions common to the class.'" *See id.* at 1008 (quoting *In re Hyundai & Kia Fuel Econ. Litig.*, 881 F.3d at 691).

//

//

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION – 27

### d.    TVPA Claims – Count III

Plaintiffs also assert a TVPA claim under 18 U.S.C. § 1592(a). This section prohibits "knowingly destroy[ing], conceal[ing], confiscat[ing], or possess[ing] any actual or purported passport or other immigration document, or any other actual or purported government identification document, of another person" in the course of or with intent to violate Section 1589 or to "prevent or restrict or attempt to prevent or restrict, without lawful authority, the person's liberty to move or travel, in order to maintain the labor or services of that person, when the person is or has been a victim of a severe form of trafficking in persons." 18 U.S.C. § 1592(a).

Plaintiffs allege that Defendant withheld work permits from H-2A workers so that they could not freely leave Defendant's orchards and to maintain the continued labor of its workers. *See* ECF No. 171 at 28. Here, Plaintiffs have presented *no* evidence of any common policy. *C.f. Ellis v. Costco Wholesale Corp.* ("*Ellis II*"), 285 F.R.D. 492, 519 (N.D. Cal. 2012) ("Plaintiffs have offered persuasive evidence of a common direction emanating from . . . upper management."). In fact, they admit that any withholding was limited to certain regions, specifically the Tri-Cities area. ECF No. 63 at 28. Resolution of this claim would require piecemeal evidence that, for the reasons explained above, bar class certification. Plaintiffs have simply not met their burden in showing common issues predominate for these claims. *See Sali*, 909 F.3d at 1004. Again, "individual questions . . . 'overwhelm questions common

to the class.'" *See id.* at 1008 (quoting *In re Hyundai & Kia Fuel Econ. Litig.*, 881 F.3d at 691).

### 2.    FLCA Class

#### a.    FLCA Contract Claims (Sections 19.30.110(5) and 19.30.120(2))

Plaintiffs claim Defendant violated these sections by imposing daily production standards. Like the TVPA claims, Defendant argues that the email establishing the policy grants discretion. For the reasons explained above, while the email may provide evidence of a common policy, individual issues regarding its implementation across the different orchards will predominate the litigation.

#### b.    FLCA Disclosure Claims Under Section 19.30.110(7)

Subject to the limitations described above, the Court finds that the predominance requirement is met as to the FLCA Disclosure Claims for the subclass of workers who worked on both contracts on the issue of whether Defendant was required to provide a second FLCA disclosure for the second contract. This legal statutory analysis question will provide a single answer for all members of the subclass. Taking a "close look," this Court determines that "common questions predominate over individual ones." *Sali*, 909 F.3d at 1008 (quoting *In re Hyundai & Kia Fuel Econ. Litig.*, 881 F.3d at 691).

//

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

### 3. Wait Time Class

Plaintiffs argue that Defendant had a common practice of failing to compensate H-2A workers for time spent waiting before and after work when they were transported to other orchards. ECF No. 63 at 22. Defendant concedes that it did not have a policy of paying workers for "non-productive time" before the Washington Supreme Court's decision in *Carranza v. Dovex Fruit Co.*, 416 P.3d 1205 (Wash. 2018). But although Defendant concedes as much, it argues that individual issues predominate over the wage withholding claims alleged by the wait-time class. ECF No. 99 at 28. This Court agrees.

For those class members who relied on transportation from Defendant to and from "away" orchards,[8] Plaintiffs allege that Defendant required class members to wait approximately thirty minutes to an hour before starting work and thirty minutes after work before being transported back to the Ice Harbor orchard. *See* ECF No. 63 at 19. Defendant responds that "any evidence of an alleged injury to any class member—is literally all over the map" and thus not amenable to resolution by representative testimony. ECF No. 99 at 29 (citing ECF No. 102-3–102-27). While

---

[8] Plaintiffs do not allege that all workers relied on Defendant's transportation. Some workers had their own cars and drove themselves to away orchards. Those workers are not part of the wait-time class. *See* ECF No. 144 at 12–13. But there would need to be some way to differentiate between those occasions when workers used personal vehicles from times that they rode Defendant's busses.

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION – 30

some orchards may have had this problem, they contend, other orchards did not. Tr. (Aug. 4, 2021); *see, e.g.*, ECF No. 102-27 at 6.[9]

In order to satisfy the predominance requirement, plaintiffs must show that "damages are capable of measurement on a classwide basis." *Comcast Corp.*, 569 U.S. at 34. "[P]laintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability." *Levya v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013). While "damage calculations alone cannot defeat certification," *id.* at 513 (internal quotation omitted), this Court must find that "calculation of damages will be sufficiently mechanical that whatever individualized inquiries need occur do not defeat class certification." *Jordan v. Paul Fin., LLC*, 285 F.R.D. 435, 466 (N.D. Cal. 2012).

Plaintiffs argue that representative testimony can be used in cases where Defendant failed to maintain adequate records. ECF No. 182 at 5; *see also Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 688 (1946), *superseded by statute on other grounds as stated in IBP, Inc. v. Alvarez*, 546 U.S. 21 (2005). True. But four

---

[9] Defendant also argues that Plaintiffs' testimony is inconsistent with the wait-time allegations. Plaintiff Gomez Rivera testified that workers were required to wait up to an hour on the bus before beginning work. ECF No. 98-2 at 91–92. He also testified that "[e]veryone would get off the bus running, run to grab their ladder, and run towards their row." *Id.* at 125 (contending that others were faster at this than him, which is why he had lower productivity). Although it does not change the result of its analysis, the Court notes that it agrees with Plaintiffs that this is not internally inconsistent. This mad-dash to start the day could occur once workers were allowed to leave the bus—after the alleged wait.

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION – 31

words belie Plaintiffs' argument of a mechanical calculation of damages: "up to" and "or more." ECF No. 63 at 19; *see also* ECF No. 66 at 8; ECF No. 67 at 7. Representative testimony will not remedy the fact that, by Plaintiffs' own admission, the amount of time spent waiting was inconsistent across the different orchards— and even inconsistent at the same orchard on different days. This is before the possible issues identifying which class members used personal vehicles and when. The predominance requirement is not met for these claims. Plaintiffs have not identified a sufficient "basis for a reasonable inference as to the extent of damages." *See Anderson*, 328 U.S. at 688.

**C.    Section 19.30.110(7) Claims**

As explained above, for those workers who worked on both contracts, the predominance and typicality requirements are met in this case. The Court considers the other requirements in turn.

**1.    Numerosity**

Although there is no fixed threshold for the numerosity requirement, *see Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 330 (1980), courts generally find classes of forty members or more are sufficient. *See Rannis v. Recchia*, 380 Fed. App'x 646, 651 (9th Cir. 2010). There were approximately 800 workers who worked on both contracts, so Plaintiffs satisfy the numerosity requirement. *See* Tr. (Aug 4, 2021); *see also* ECF No. 105 at 4.

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION – 32

### 2.    Commonality

Rule 23(a)(2) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "All questions of fact and law need not be common to satisfy the [commonality requirement]. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Meyer*, 707 F.3d at 1041 (quoting *Hanlon*, 150 F.3d at 1019) (alteration in original). "The common contention 'must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Id.* at 1401–42 (quoting *Wal-Mart*, 564 U.S. at 350). The key inquiry under this factor is whether class treatment will "generate common *answers* apt to drive the resolution of the litigation." *Torres*, 835 F.3d at 1133 (quoting *Wal-Mart*, 564 U.S. at 350) (emphasis in original). However, not every question of law or fact needs to be common to the class. *Valencia v. HomeDeliveryLink Inc.*, No. 4:18-cv-05034-SMJ, 2019 WL 7819649, at *3 (E.D. Wash. Sept. 23, 2019). Rather, "[t]o satisfy Rule 23(a)(2) commonality, 'even a single common question' will do." *Torres*, 835 F.3d at 1133 (quoting *Wal-Mart*, 564 U.S. at 350) (alterations omitted). Whether a question will drive the resolution of the litigation depends on the nature and elements of the underlying claims. *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165–66 (9th Cir. 2014). Common

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION – 33

questions must contain sufficient "glue" to bind class members' claims. *Id.* at 1166 (quoting *Wal-Mart*, 564 U.S. at 352).

For the reasons explained in the predominance section above, the commonality requirement is met as to Plaintiffs' Section 19.30.110(7) claims. Class treatment will "generate common *answers* apt to drive the resolution of the litigation." *Torres*, 835 F.3d at 1133 (emphasis in original); *see also Sali*, 909 F.3d at 1008 ("Rule 23(b)(3)'s predominance inquiry is 'far more demanding' than Rule 23(a)'s commonality requirement." (quoting *Amchem Prods., Inc.*, 521 U.S. at 624)).

### 3.    Adequacy

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Determining whether representation is adequate requires the court to consider two questions: '(a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Sali*, 909 F.3d at 1007 (quoting *In re Mego Fin. Corp. Secs. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000)).[10]

---

[10] The commonality and typicality requirements "also tend to merge with the adequacy-of-representation requirement." *Dukes*, 564 U.S. at 349 n.5 (quoting *Gen. Tel. Co. of Sw.*, 457 U.S. at 157–58 n.13).

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION – 34

For the reasons explained as to typicality, the Court does not find that Plaintiffs have interests adverse to the class members that render them inadequate representatives. And Plaintiffs have met their burden of showing that they will prosecute the action vigorously on behalf of the class. Additionally, class counsel does not have any conflicts, and have "lengthy track records representing workers in class action litigation and will vigorously prosecute the action on behalf of the class." ECF No. 63 at 33–34. Defendant does not appear to dispute that counsel is adequate to represent the class. *See generally* ECF No. 99; *see also* Tr. (Aug. 4, 2021). Accordingly, the adequacy requirement is met as to both representative Plaintiffs and class counsel for the Section 19.30.110(7) claims.

### 4.    Superiority

Finally, Rule 23(b) also requires that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." In determining superiority, courts consider

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION – 35

1    There is no evidence or reason to believe that any of the members of the

2    proposed class have a strong interest in pursuing their own suits. *See* Fed. R. Civ. P.

3    23(b)(3)(A). Given class members' limited English proficiency, financial resources,

4    and understanding of this country's legal system—as well as the fact that most class

5    members reside in Mexico, the likelihood of individual suits is small. There are no

6    pending related suits commenced by class members. Fed. R. Civ. P. 23(b)(3)(B).

7    And, as Defendant admits, class members' claims would otherwise be time barred,

8    so they likely could not bring an individual claim at this point. *See* ECF No. 189 at

9    5 n.3.

10    Other than those in Mexico, most potential witnesses are in this district, as is

11    Defendant. Fed. R. Civ. P. 23(b)(3)(C). As Plaintiffs point out, even though the

12    language barrier and geographic location of class members may cause logistical

13    challenges, these are alleviated by class action treatment, but would be exacerbated

14    by a series of individual suits. ECF No. 63 at 35.

15    For these reasons, the superiority requirement is met as to Plaintiffs' Section

16    19.30.110(7) claims.

17    **CONCLUSION**

18    Plaintiffs have identified and alleged concerning issues with Defendant's

19    policies and culture. In fact, Defendant admits that at certain orchards and with

20    certain managers, legal violations likely occurred, giving rise to "legitimate gripes."

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR
CLASS CERTIFICATION – 36

Tr. (Aug 4, 2021). Unfortunately, with the exception of their Section 19.30.110(7) claims, Plaintiffs have simply not met their burden of showing that this case is manageable as a class action. The sprawling physical and factual landscape of this case, as well as the thorny issues with the proffered class representatives, render this case generally too unwieldy and unfit for class treatment under the required rigorous analysis. *Sali*, 909 F.3d at 1004. The Court thus grants in part and denies in part Plaintiffs' bid for class certification.

Accordingly, **IT IS HEREBY ORDERED**:

1.    Plaintiffs' Motion for Class Certification, **ECF No. 63**, is **GRANTED IN PART** and **DENIED IN PART** as described above.

2.    The Court certifies the following class, referred to as the "FLCA Subclass," under Rule 23(b)(3):

> All Mexican nationals employed at Stemilt Ag Services, LLC in Washington, pursuant to *both* the 2017 H-2A contract from January 16, 2017 through August 11, 2017 and the H-2A contract from August 14, 2017 through November 15, 2017"

for the purposes of litigating class members claims under Wash. Rev. Code § 19.30.110(7) only.

3.    Columbia Legal Services and Keller Rohrback L.L.P. are appointed as class counsel pursuant to Rule 23(g).

4.    The Court designates named Plaintiffs Gilberto Gómez Garcia and Jonathan Gómez Rivera as class representatives.

5.    **By no later than three weeks from the date of this Order**, the parties shall confer concerning notice to the class pursuant to Federal Rule of Civil Procedure 23(c)(2) and shall file a proposed Notice and notice plan.

   *A.*    If the parties cannot reach an agreement regarding the proposed Notice and notice plan, Plaintiffs shall submit a proposed Notice and notice plan by that date.

   *B.*    Defendant shall have **ten days** from service of the proposed Notice and notice plan to serve and file any objections.

   *C.*    Plaintiffs shall have **five days** from service of any objection to serve and file a reply.

//

//

//

//

//

//

//

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION – 38

6.    **By no later than three weeks from the date of this Order**, the parties shall file a joint status report with proposed deadlines for the remainder of this matter—including those claims which the Court did not certify as a class action—and addressing any other issues of which they believe the Court should be aware.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 20th day of August 2021.

_____
SALVADOR MENDOZA, JR.
United States District Judge

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION – 39